## SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# CUMBERLAND.

### MAY TERM,

### 1823.

---

### SCOTT v. M'LELLAN & TURNER.

A supercargo cannot, in virtue of that capacity, bind his principals as acceptors of a bill of exchange drawn by himself, without express authority from them to that effect, communicated to, and relied upon at the time, by the party who received the bill.

It is not the *amount* of interest which determines the question of the competency of a witness. Any *direct* interest, however small, is sufficient to exclude him, even if it be only in the costs of the suit.

The drawer of a bill of exchange is not a competent witness for the indorsee, in an action against the acceptor, because of his liability to damages, interest, and costs, if the party calling him should not prevail.

ASSUMPSIT, by the indorsee against the defendants as acceptors of a bill of exchange, drawn on them by one *Bradshaw.*

At the trial, which was upon the general issue, the plaintiff, to prove the authority given by the defendants to draw the bill in question, offered the deposition of *Bradshaw* himself, who was appointed by the defendants supercargo of the ship *Romeo* for a voyage on their account, and drew the bill for payment of part of her return cargo of salt. This deposition was objected to, on account of the interest of the deponent in the present suit; and was rejected by the presiding Judge, on the ground that the deponent would be answerable to the holder for a greater sum if he failed to recover, viz. for the damages and other charges, than to the defendants, should judgment be rendered against them.

It was then proved by the plaintiff that in *February* 1820 the bill was presented to the defendant *M'Lellan* for payment; and, that he acknowledged in behalf of himself and *Turner* that *Bradshaw* was agent for the voyage,—that they had received the salt for which the bill was drawn, and had in their hands a balance of about $300 due from them to *Bradshaw*, which they would pay and have indorsed on the bill;—but that they would not accept the bill, because *Bradshaw* had spent some of their funds for some *Nicaragua*-wood, which proved to be of little value.

The plaintiff also proved that in *April* 1820 another applica-tion was made to the defendant *M'Lellan* for payment of the bill,—when he acknowledged that they had about $300 of *Bradshaw's* money in their hands which they would pay; but would not accept it, nor pay any greater sum. This the plain-tiff did not receive, and the bill was duly protested.

The Judge hereupon directed the plaintiff to become non-suit, with leave to move to set it aside, if the whole Court should be of opinion that the deposition was improperly rejected, or that the other testimony was sufficient to support the action.

*Emery*, for the plaintiff.

The question is, whether the defendants, from the nature of *Bradshaw's* general authority, as agent for the voyage, are not *bound* to pay such bills as he might draw in the regular course of his employment, without a formal acceptance?

He was sent to purchase a cargo—without limitation of his authority, or of the means he should employ—the trust was not novel, but regular and ordinary—and the defendants have at no time denied his authority to draw, but only complained that he had imprudently vested some of their funds in goods of little value, thereby causing them a loss.

Now employers are answerable *civiliter* even for the *frauds* of servants, if done in the course of their employment. 1 *P. Wms.* 396. 2 *D. & E.* 97. The mere fact of the employ-ment involves in itself authority to do all things usual and prop-er in the course of the business. But if special authority is necessary, it may be inferred from the fact of the money or goods coming to the hands and use of the principal. *Clark's*

Scott *v.* M'Lellan & al.

*Ex'rs v. Van Riemsdyk* 9 *Cranch*, 153. *Rusby v. Scarlett*, 5 *Esp.* 76.

The principal may be liable for the act of his servant *without* authority, if the money be actually applied to his use. 1 *Ld. Raym.* 225. And if a previous employment and course of dealings establish the existence of a *general* agency, the principal is liable for acts done by the servant in the course of such general agency, even though the act be against the letter of particular instructions. *Whitehead v. Tucket,* 15 *East,* 400. *Howard v. Bailey,* 2 *H. Bl.* 618. 3 *D & E.* 757. *Polleys v. Soame,* *Goldsb.* 138.

Here, therefore, the defendants having received the salt, and adopted the agency of *Bradshaw* in obtaining the cargo, they are bound to adopt the means he lawfully employed to obtain it. They cannot be admitted to recognize part of the transaction and reject the rest. 2 *Str.* 859.

As to the interest of *Bradshaw,*—it was balanced, or nearly so. The chance of paying a little more *cost* in one case than in the other was not sufficient to exclude him. *Ilderton v. Atkinson,* 7 *D. & E.* 476. *Staples v. Okines,* 1 *Esp.* 332. For certain purposes the drawer of a bill of exchange is always admitted as a witness. *Chitty on bills,* 531, and the cases there cited. *Masters v. Abraham,* 1 *Esp.* 375. *Phillips' Evid.* 76, *note.* *Snee v. Prescott,* 2 *Atk.* 248. *Johns v. Pritchard,* 2 *Esp.* 507. *Poole v. Pousfield,* 1 *Camp.* 55. *Storer v. Logan,* 9 *Mass.* 55. *M'Leod v. Johnson,* 4 *Johns.* 126. *Wise v. Wilcox,* 1 *Day,* 22. *Cushman v. Loker,* 2 *Mass.* 106. 2 *Caines,* 77.

But he is not interested. If he had a right to draw, then, if the bill was drawn for the benefit of the defendants, they are holden at all events to pay. If the bill was drawn for *Bradshaw's* own accommodation, then the defendants stand in the place of his sureties, the act being done in the course of his employment; and they have a right to retain his funds sufficient to meet all their liabilities on his account.

At all events the plaintiff is entitled to recover on the money counts; for the case finds an offer to pay part after protest,—which is equivalent to a conditional acceptance for that amount, and is irrevocable. 1 *Camp.* 175. *Mitchell v. Degrand,* 1 *Mason,* 176.

*Longfellow*, for the defendants.

The cases cited on the other side either go on the ground of general agency, or are cases of subsequent assent, and so inapplicable to the present.

*Bradshaw* was interested, because he had drawn a bill which was not accepted. He was liable to the payment of damages and expenses, as well as of the bill itself, unless he could shew his authority to draw, which he had therefore a direct interest in proving. Had the bill been accepted, and protested for non-payment, the amount of his liability would have been different.

Further, the bill was made chargeable, not to the drawer, but to the " charterers of the ship *Romeo*." Had it been accepted, the defendants could not recover it of *him*;—and therefore he was interested to cause them to pay it at all events.

As to his agency,—no supercargo or master is authorized to draw on his owners, unless he is ordered to buy, without being furnished with funds, or is specially empowered. A different principle would be destructive of mercantile confidence. And in this case he did not draw as agent.

Nor are the defendants liable on the money counts. Here is no privity between the parties, except as parties to the bill; and there is an express contract by the bill, in which any implied contract is merged. If the plaintiff would avail himself of the money offered, he should have taken it, and protested for the rest. But he *refused* it;—and the action now stands on the bill alone.

After this argument, which was had at the last *November* term, the cause stood over for advisement, and the opinion of the Court was now delivered as follows, by

Weston J. Two questions are presented to the consideration of the Court. Is the action sustainable upon the evidence admitted? If not, ought the testimony of *Bradshaw*, the drawer, which was rejected by the Judge, to have been received?

The defendants are charged upon the common money counts, and as acceptors of a bill of exchange drawn by *Bradshaw* in favour of *James Munro* or order, and by him indorsed to the plaintiff. The bill was originally drawn in consideration of a

quantity of salt purchased of the payee by *Bradshaw*, as the agent of the defendants, which afterwards came to their use.

If they were liable to the payee for the value of the salt purchased of him by their agent, that obligation or liability could not be assigned to the plaintiff, so as to enable him to maintain the action in his own name ; unless, of which there is no proof, the defendants, upon notice of such assignment, had expressly promised to pay the plaintiff as assignee. He cannot recover therefore upon the money counts ; there being no legal privity between him, and the defendants. 1 *East.* 98. *Johnson v. Collings.*

If this action can be sustained at all, it must be upon the count, charging the defendants as acceptors. There was no direct acceptance of the bill, either in writing or by parol ; for although the defendants, at two several times, offered to pay thereon the sum of three hundred dollars, which they acknowledged they had in their hands of *Bradshaw's*, they at each time expressly refused to accept the bill. There being no acceptance, or agreement to accept, after the bill was drawn, the plaintiff must rely upon an agreement to accept before it was drawn, either expressly made, or resulting from the relation in which *Bradshaw* stood to the defendants. If there had been an express agreement to accept this bill before it was drawn, such agreement is available to the party to whom it has been shewn, and who receives the bill upon the strength of it. *Johnson v. Collings* before cited. *Mason v. Hunt & al.* 1 *Doug.* 296. *Wilson v. Clement,* 3 *Mass.* 1. And it may be questionable whether the benefit of such special agreement is negotiable. But no express agreement to accept is pretended in the present case. Did it result from the relation in which the defendants stood to *Bradshaw ?* He was their agent and supercargo. No case has been cited, nor can, it is believed, be found, tending to shew that in this capacity, he could bind his principals as acceptors of a bill which he might draw, without express authority from them to this effect communicated to, and relied upon at the time by, the party who received the bill.

But if such authority was incident to his character as supercargo, we have no evidence that it was exercised on this occasion. It is true that as drawer of the bill, he undertakes that

the drawees shall accept; but that is his agreement, not theirs. The bill does not purport to have been drawn by him as their agent. He signs his own name without any qualification; and no other person is responsible or can be charged as drawer. *Mayhew & al. v. Prince,* 11 *Mass.* 54. We perceive therefore nothing in the evidence admitted, which can have the effect to establish the liability of the defendants as acceptors.

We are next to inquire whether the deposition of *Bradshaw* was rightfully rejected, upon the ground of interest. It is contended that he stands indifferent between the parties. If so, his testimony is without doubt legally admissible. But such does not appear to be the fact. If the plaintiff prevails, *Bradshaw* will be liable to account to the defendants for the amount of the bill only. If they succeed, he, as drawer, will be answerable to the plaintiff, as holder, not only for the amount of the bill, but also for charges, damages, and interest. Upon principle there seems to be no good reason why a balance of interest should not have an equal effect to exclude a witness, as where he is interested to the same amount in favour of one side only. It is insisted however, that the balance of interest, if it exists, is to be disregarded; and express authorities to this effect have been adduced.

In *Dickinson v. Prentice,* 4 *Esp.* 34. the drawer was received as a witness to prove the hand-writing of the acceptor; but the objection there taken to his competency and overruled was upon another ground, namely, that if the jury found the acceptance to be a forgery, the forgery might be imputed to him, and he might be committed and tried for a capital offence. In a previous case, *Barbor v. Gingell,* 3 *Esp.* 60. the drawer was admitted as a witness in an action against the acceptor, and an objection to his competency, similar in principle to the preceding, was overruled. In *Storer v. Logan & al.* 9 *Mass.* 55. the drawer was called and admitted as a witness *for the defendant,* who was charged as acceptor. In the case of *Ilderton v. Atkinson,* 7 *D. & E.* 480. which was an action of *assumpsit,* the question was whether *A. B.* who had received the money due from the defendant to the plaintiff, received it in the character of agent; the Court held that *A. B.* might be called by the defendant to prove his agency, notwithstanding it was objected

that if he had received the money under a misrepresentation of his own character, the defendant might, if he failed in his defence, recover from him the costs of the action then depending, as well as the money. The Court in this case considered the witness as having no interest which would exclude his testimony within the general rule of law; and they did not place it upon the ground that his relation as agent brought him within any exception to that rule. And upon the authority of this case, the Court decided in the case of *Birt v. Kirkshaw,* 2 *East,* 458, that the indorser of a note, who had received money from the drawer to take it up, was a competent witness, in an action by the indorsee against the drawer, to prove, on the part of the defendant, that he, the indorser, had satisfied the note, notwithstanding he was liable to the defendant, if the plaintiff prevailed, for the costs of the action, but to the plaintiff only for the amount of the note, if the defendant prevailed.

Except the case of *Storer v. Logan,* where the drawer was called to testify against his interest, the preceding cases, especially the two last, are authorities in favour of the admissibility of the deposition rejected. And if the two last cases, where the balance of interest was expressly overruled, and disregarded, are to be considered as law, the deposition of *Bradshaw* ought to have been received. If no opposing decisions could be found, notwithstanding it might be difficult to reconcile these cases with general principles, their authority would have a strong claim upon our consideration.

It is not the amount of interest, which determines the question of competency. A small interest may have as much influence upon some minds, as a greater upon others. In order to exclude altogether testimony, which might be liable to that bias, by the general principles of the law of evidence, any direct interest, however small, renders the witness incompetent.

In an action by an infant plaintiff, his prochien amy or guardian are not competent witnesses for him, as they are liable to costs. *James v. Hatfield,* 1 *Strange,* 548. *Hopkins v. Neal,* 2 *Strange,* 1026. So a person, who has given a bond to indemnify the plaintiff from the costs of the suit, is incompetent. *Butler v. Warren,* 11 *Johns.* 57. If therefore a person liable to the costs of the action, but having no other interest therein, is in-

competent, of which there seems to be no doubt, his interest, and the influence it may have upon his mind, is precisely the same where he is answerable to one of the parties, if he fail, for the amount in dispute ; but to the other party, if he fail, not only for that amount, but also for the costs. If we are bound to consider him competent in the one case and incompetent in the other, it must be upon authority, not principle.

But authorities of a more recent date are to be found, which appear to accord better with the general law of evidence than some of those before cited.

In *Jones v. Brooke*, 4 *Taunton*, 464. which was an action against the acceptor of a bill accepted for the accommodation of the drawer, it was decided that the wife of the latter was an incompetent witness for the defendant to prove that the holder received the bill upon an usurious consideration, upon the ground that the drawer was bound to indemnify the acceptor, who had become such for his accommodation, not only for the principal sum but also for the costs of the action, if it should be sustained. This decision was not predicated upon the rule laid down in the case of *Walton v. Shelly*, that a party to a negotiable instrument shall not be received as a witness to prove it originally void, which prevails here ; but which had been previously overruled in the English Courts.

In *Townsend & al v. Downing*, 14 *East.* 565. the case of *Ilderton v. Atkinson*, before cited, was adduced by counsel to prove that a liability for costs on one side only did not render a witness incompetent ; where he was equally liable to an action, in either event of the cause. *Leblanc* J. in reply said there was a late cause in C. B. where that matter had been questioned : and Lord *Ellenborough*, C. J. asked why there should not be an interest in costs, as well as on any other account.

*Hubbly v. Brown & al.* 16 *Johns.* 70. was *assumpsit* by the indorsee against the defendants, as indorsers of a note made by *Rufus Clap*, payable to their order. *Clap* was offered and, although objected to, received as a witness for the defendants to prove that, after the note had become due, a further time of payment had been given to him by the holder. Whether the witness was rightfully received or not, was a question referred to the consideration of the whole Court. *Spencer* C. J. after-

wards in delivering their opinion says, " if this was an accom
" modation note, the objection to the witness was well founded ;
" because if the defendants were rendered liable in this action,
" they would have a remedy over against the maker of the
" note, not only for the principal and interest, but for the costs."
And he cites with approbation the case of *Jones v. Brooke,* before mentioned.

Upon the whole we are all of opinion that the deposition rejected was inadmissible, upon the ground of interest ; and the
motion to set aside the nonsuit is overruled.