Baker *v.* Martin.

SAME TERM.   *Before the same Justices.*

BAKER *vs.* MARTIN, administratrix of Martin.

Where the plaintiff put his name upon a note as a second endorser, at the request of the payee who had previously endorsed the same, to enable the latter to get the note discounted at some bank, for his own benefit, and upon his promise to take care of it if the maker should not; *Held* that the plaintiff was to be considered as having endorsed the note, not as surety for the maker, but for the accommodation of the payee, or at least merely as second endorser; and that he was entitled to all the rights and privileges of that character.

The report of a referee is like the verdict of a jury. It is conclusive, upon a question of fact, where there is no decided preponderance of evidence in favor of the party against whom it is made.

A judgment recovered against the sheriff, in an action for not returning an execution issued on a judgment recovered against the maker of a note, is not a satisfaction or extinguishment of the first judgment, so as to discharge a second endorser from his liability upon a judgment recovered against him as such second endorser.

Nor will such judgment against the sheriff, estop the second endorsor from recovering from the maker and first endorser, the amount of any payments made by him on the note.

The judgment against the sheriff, in such case, is merely a cumulative or collateral security for the same debt, and does not deprive the holder of the note of the right to enforce the previous judgment against the second endorser

An estoppel must be reciprocal. It must bind both parties, or neither.

Baker *v.* Martin.

Where an endorsee of a note has paid up the whole note, and become the legal owner of it, he can either sue the endorser on the note, or for money had and received, or paid, laid out and expended. But where he has only paid the note in part, not being the legal owner of the note, he cannot sue thereon; but he can recover against the endorser for the money actually paid, on the money count, as for money paid, laid out and expended for the defendant, at his request.

A person who makes or endorses an accommodation note, for the accommodation of a party thereto, is regarded as a surety, and can charge such party with the costs of a suit for the collection of the note, which he has been compelled to pay.

MOTION to set aside the report of a referee. The action was assumpsit. The plaintiff declared upon a promissory note dated Feb. 27, 1842, drawn by Chester Johnson, and payable to the order of J. R. Martin, (the defendant's intestate,) for $325,22, ninety days after date, at the Troy City Bank, endorsed by J. R. Martin, Wm. Baker, (the plaintiff,) and James Burton. The declaration also contained the money counts. The note was discounted by the Albany Exchange Bank for the payee, John R. Martin. It was protested for non-payment, and notice given to the endorsers. The note, after it was over due, was paid to the Albany Exchange Bank, but the clerk who proved the payment could not state by whom it was paid. The note was sued by the attorney of the Exchange Bank, in the name of the bank, for the benefit of Martin the payee and first endorser. Process was, by the direction of Martin, served only on the maker and on Baker the plaintiff. Judgment was obtained against Baker, on the note, on the 12th of July, 1842, for $352,87, and against Johnson the maker, on the 19th of Oct. 1842, for $398,49. Executions were issued on both judgments to the sheriff of the county of Washington, on the 10th of Dec. 1842. Afterwards the sheriff was sued for not returning the execution against Johnson, and judgment was recovered against him for $445,62, on the 21st of March, 1843. Johnson, the maker, testified that the note in question, and another note for the same amount, were given by him to take up a note of $650 which Martin held against him; and that the plaintiff endorsed the note in question at the request of Martin, as an accommodation to him. Martin told him, if he would endorse it, and the witness (Johnson) should not pay it, he (Baker)

should have no trouble with it, and that he (Martin) would take care of it; that Baker then endorsed it, after Martin had first written his own name on the back of the note. Johnson, on being applied to by Martin for that purpose, expressly refused to procure the endorsement of the plaintiff on this note as security to him (Martin.) The attorney for the bank testified, that he received three payments on the judgment against the sheriff; one of $139,40, paid on the 25th of March, 1843, and shortly after, another payment of $274, and soon after this payment, a third payment of $60,60, by a check from the sheriff. These payments were received in full satisfaction of the note, and of all the costs. The damages received by the attorney were paid to Martin. The attorney stated that he received the two first payments from Johnson. The sheriff testified that Baker paid him $200 on the execution against him (Baker) during the March term of the Washington common pleas in 1843, (which commenced on the 4th of March;) that he paid the $200 to the attorney of the bank, in two payments, one of $139,40, and the other of $60,60; that a suit had been commenced against him (the sheriff) either before or after the payment of the $200; that the execution against Baker had run out when this sum was paid by him; that the payment by Baker was to apply on the execution against him; and that he paid the greater part of the $200, to the attorney, a few days after he received it. Johnson testified that he paid the $274 to the attorney of the bank; and that he received the money from the plaintiff, for that purpose, a day or two before he paid it to the attorney. He took a satisfaction piece of the judgment against Baker when he paid the money, and he did so by Baker's directions; when he made the payment he understood he was making it on the execution against Baker and himself; the plaintiff gave him the money a short time before he paid it, and told him to pay it on the execution against the plaintiff and the witness; the plaintiff received from the witness no consideration for the $274. The sheriff made a levy on the execution against the plaintiff, when he first received it; he testified that he told the plaintiff, unless he paid the debt he would sell his property

on the execution against him; and he thought that Baker paid him his fees on the execution. When the plaintiff paid him the $200, he understood that he the witness had been sued, on the Johnson business; and witness could not say that he knew on what execution he had been sued. The sheriff testified that the plaintiff had agreed to pay a part of the debt before he paid him the $200. The sheriff appeared, from his evidence, to be in doubt whether, when this sum was paid, judgment had or had not been recovered against him. He appeared to be in doubt, also, whether the plaintiff paid him the $200 to be applied on the execution against the plaintiff, or on the judgment against him (the sheriff.) The costs in the suit against the plaintiff were paid to the attorney of the Exchange Bank. The referee reported in favor of the plaintiff for $252.

*H. Harris*, for the defendant.

*James Gibson*, for the plaintiff.

*By the Court*, Paige, J. The counsel for the defendants, on the argument of this cause, made the following points, viz: 1. That the plaintiff endorsed the note in question for the purpose of giving the maker credit with the defendants' intestate; 2. That there was no evidence that the plaintiff made any payments upon the note; 3. That the judgment against the sheriff was a satisfaction of the judgment against the maker of the note, which discharged the plaintiff; and if the plaintiff made any payments thereafter he could not charge the defendants with the same; 4. That the report was against evidence. The evidence, it appears to me, does not sustain the first point of the defendants' counsel. I can find nothing in the case to authorize the inference that the plaintiff endorsed the note to give the maker credit with the defendant's intestate. The only evidence on the subject is that of Johnson the maker. He says that the note in question, and another note of the same amount, were given to take up a note of $650 which Martin the intestate held against him; that the plaintiff put his name on the

note as a second endorser, for the accommodation of Martin, and upon Martin's promise to take care of the note if Johnson did not pay it, and upon his further promise that the plaintiff should have no trouble with it.   Martin got the note discounted at the Albany Exchange Bank, for his own benefit.  From this evidence it would seem that the plaintiff endorsed the note for the accommodation of Martin the payee, and to enable him to obtain a discount of it at some bank for his own benefit; and not for the mere purpose of giving the maker credit with Martin.   Johnson, the maker, when applied to by Martin for that purpose, expressly refused to procure the endorsement of the plaintiff as security for the payment of the note to Martin.   The referee was bound, from this evidence, to find that the plaintiff endorsed the note for the accommodation of Martin, or at least merely as a second endorser, and that he was entitled to all the rights and privileges of that character.   The evidence rebuts all intention on the part of the plaintiff to endorse the note as security of the maker for the payment of the note to Martin.   We must intend, therefore, that the plaintiff meant only to become a second endorser of the note, with all the rights and privileges of that character. (*Herrick* v. *Carman*, 12 *John.* 159.   *Tillman* v. *Wheeler*, 17 *Id.* 326.   *Dean* v. *Hall*, 17 *Wend.* 223.   *Seabury* v. *Hungerford*, 2 *Hill*, 84.)   Even if the plaintiff had endorsed the note with the intention of becoming surety for Johnson to Martin, and if Martin received the note under the supposition that the plaintiff, by his endorsement, became such surety, the plaintiff would not have been either legally or equitably liable to Martin, as a surety for Johnson.   This was so decided by the chancellor in *Phelps* v. *Garrow*, (8 *Paige*, 322.)   The chancellor in that case held, that an intention of a third person to become the surety of a debtor by endorsing a draft drawn in his favor upon the debtor by the creditor, the endorsement being without consideration, cannot render the endorser either legally or equitably liable to the drawer for the payment of the draft; as nothing short of a written agreement could render the endorser liable as surety, under the provisions of the statute of frauds. In this case the note was not given upon any new considera-

Baker *v.* Martin.

tion, but for a precedent debt; to take up a previous note held by Martin against Johnson, upon which it does not appear that there was any other name except Johnson's. Even if there had been a parol agreement that the plaintiff should be liable as guarantor of the note, it seems it would have been superseded by the written contract of endorsement; and according to the opinion of Justice Bronson in *Seabury* v. *Hungerford*, (2 *Hill,* 84, 5, 6,) Martin could not abandon this written contract, and go back to the prior negotiation, for the purpose of charging the plaintiff as guarantor. But the character of the endorsement of the plaintiff, was a question of fact for the decision of the referee. His report is like the verdict of a jury. It is conclusive where there is no decided preponderance of the evidence in favor of the party against whom it is made. (1 *Barb. Sup. Court Rep.* 235. 2 *Hill,* 578. 3 *Id.* 256. 2 *Wend.* 356.) The preponderance here is in favor of, and not against, the report.

The evidence shows that the plaintiff advanced all the money which was paid to the attorney of the Albany Exchange Bank. The plaintiff paid $200 on the execution against himself, to the sheriff, during the March term of the Washington common pleas, which commenced on the 4th of March. The judgment against the sheriff was not obtained until the 21st of March, 1843. The referee was authorized to infer, from the evidence, that the payment was made to the sheriff previous to the recovery of the judgment against him. At all events this was a question of fact for the determination of the referee. His decision we cannot disturb. Whether the $200 was paid to the sheriff, by the plaintiff, expressly upon the execution against the plaintiff, or upon the judgment against the sheriff, was also a question of fact for the decision of the referee. I think the evidence warranted his finding that it was paid by the plaintiff on the execution against himself. The sheriff had levied on the plaintiff's property, and had told him that he would sell it unless the debt was paid. The sheriff having made a levy during the life of the execution, was authorized to sell after the return day, at least until the recovery of the judgment against himself. The plaintiff had agreed with the sheriff to pay a

Baker *v.* Martin.

part of the debt before he made the payment of the $200. The plaintiff, when he paid the money, would naturally pay it on his own execution, to the end that he might be exonerated from the execution, and have a remedy over against Martin. But I do not think it material whether the payment was made in terms on the execution against the plaintiff, or on the judgment against the sheriff. If paid on the latter, it was substantially a payment on the note; and the plaintiff being liable on the judgment and execution against himself, was entitled to the benefit of it as a payment on the note. But as we must infer, from the finding of the referee, that the $200 was paid to the sheriff by the plaintiff, before the recovery of the judgment against the former, such payment could not have been made on such judgment, and must therefore have been made on the judgment and execution against the plaintiff. The $274 paid to the attorney of the bank was also paid by the plaintiff. He gave the money to Johnson, to be paid to the attorney, a short time before Johnson paid it over to the attorney. Johnson swears that the plaintiff directed him to pay it on the execution against them; supposing, probably, that there was only one execution against both. The attorney swears that he received this payment shortly after the 28th of March, which was subsequent to the recovery of the judgment against the sheriff. The referee probably came to the conclusion that this payment was made after the recovery of the judgment against the sheriff, and for that reason, doubtless, rejected it, as a claim against the defendants.

The counsel of the defendants contends that the judgment against the sheriff was a satisfaction of the judgment against the maker, and discharged the plaintiff; and that if the plaintiff afterwards made any payments he could not charge them against the defendants. I do not think the judgment against the sheriff was a satisfaction of the judgment against the maker, so as to discharge the plaintiff. The judgment against the sheriff did not deprive Martin, or the Exchange Bank, of the right to enforce the previous judgment against the plaintiff. The judgment against the sheriff was merely a cu-

mulative or collateral security for the same debt. It did not extinguish the previous judgment. The owner of the two judgments had a perfect right to collect the whole or a part of the previous judgment from the plaintiff, notwithstanding the judgment against the sheriff. He might abandon, altogether, the judgment against the sheriff. He was at liberty to collect either judgment. He could not collect both. The payment of the one was a payment of both. Bringing an action upon a judgment, and recovering a judgment thereon, is not a satisfaction of the first judgment. Taking a new security, of an equal or inferior degree, is not an extinguishment of the original debt. The first judgment is not satisfied until the second judgment is paid in fact. Until the second judgment is in fact satisfied, an execution may be issued upon the first judgment and the amount thereof collected. (*Harvey* v. *Wood*, 5 *Wend.* 222. *Ontario Bank* v. *Hallett*, 8 *Cowen*, 194. *Mumford* v. *Stocker*, 1 *Id.* 178. *Jackson* v. *Shaffer*, 11 *John.* 513. *Andrews* v. *Smith*, 9 *Wend.* 53.)

The doctrine of estoppel has no application. An estoppel must be reciprocal. It must bind both parties, or neither. (*Co. Litt.* 352, *a.*) A judgment binds only the parties and their privies. (1 *Phil. Ev.* 324.) The plaintiff was not a party or privy to the judgment against the sheriff. Martin was not estopped by that judgment from enforcing the judgment against the plaintiff. Not being himself estopped, he could not set up the judgment against the sheriff as an estoppel against the plaintiff, to prevent his recovery for any payments made by him on account of the original note, or of the judgment recovered thereon against him although made after the recovery against the sheriff.

A promise by the plaintiff, to the sheriff, to pay the debt, made after the sheriff had been guilty of neglect in not returning the execution against Johnson, would have been a valid promise. The moral obligation to pay the debt would have been a sufficient consideration to uphold such promise. (*Given* v. *Driggs*, 1 *Caines*, 460. *Doty* v. *Wilson*, 14 *John.* 381.) The plaintiff in this case, before the recovery of the judgment against the sheriff, agreed with the latter to pay a

part of the debt. This agreement was binding upon the plaintiff. And even if he omitted to make the payment until after the recovery against the sheriff, such payment, when made, ought, both legally and equitably, to be deemed a payment on the original note.

I cannot see any obstacle to the plaintiff's remedy as a second endorsee, against Martin as the first endorser, for the recovery of the whole amount of the note, since the plaintiff has paid the whole to the sheriff and to the attorney of the Albany Exchange Bank. But as the plaintiff has not moved to set aside the report of the referee, we cannot set it aside upon the ground that the referee has rejected a part of the plaintiff's claim against the defendants.

The plaintiff is entitled to recover either on the note, or on the count for money paid, laid out, and expended for the defendant's intestate. Where an endorsee has paid up the whole note and become the legal owner of it, he can either sue the endorser on the note, or for money had and received, or paid, laid out and expended. But where he has only paid it in part, he cannot sue on the note, not being the legal owner of it, but he can recover against the endorser for the money actually paid, on the money count, as for money paid, laid out and expended for the defendant at his request. (*Butler* v. *Wright*, 20 *John*. 367. 2 *Wend*. 369, *S. C.* 6 *Id*. 290, *S. C. in error*.)

The referee probably allowed to the plaintiff the sheriff's fees on the execution against him. The plaintiff was not entitled to an allowance for the payment of these fees, unless he endorsed the note for the accommodation of Martin. A person who makes or endorses an accommodation note, for the accommodation of a party thereto, is regarded as a surety, and can charge such party with the costs of a suit for the collection of the note, which he may have been compelled to pay. (*Hubbly* v. *Brown*, 16 *John*. 70. *Jones* v. *Brooke*, 4 *Taunt*. 464. *Chit. on Bills*, 320. 1 *Greenl. Ev.* § 401. *Bagnall* v. *Andrews*, 7 *Bing*. 217. *Skilding* v. *Warren*, 15 *John*. 273.) I have doubts whether the note in question can be considered an accommodation note made to enable Martin to borrow

money. (15 *John.* 273. 7 *Bing.* 217, *supra. Simpson* v. *Griffin,* 9 *John.* 131.) But whether it was an accommodation note, or not, was a question of fact for the referee; and with his decision on this point I am not disposed to interfere. Besides, if he erred in allowing to the plaintiff the sheriff's fees, inasmuch as in my judgment the referee ought to have allowed the plaintiff the whole amount of the note, the report ought not to be set aside for so trifling an error against the defendant.

The motion to set aside the report of the referee must be denied, with costs.

