OEXNER, Respondent, v. LOEHR et al., Defendants; DONK, Appellant.

St. Louis Court of Appeals, March 27, 1906.

1. **NEGOTIABLE INSTRUMENT: Maker: Indorser.** This case was before the court on a former appeal and is reported in 106 Mo. App. 412, where a full statement of the facts may be found.

2. ———: ———: ———. While one who is neither payee nor indorsee, signing a note on the back, is prima facie presumed to be a maker, it is competent to show that he was indorser by an agreement that he should be treated as such; and such agreement need not be an express one between such indorser and the payee, but if it was made between the principal in the note and the indorsee and assented to by the payee, it is sufficient.

3. ———: ———: ———: **Popular Use of Term Indorser.** While the use of the words "indorse" and "indorsement" in negotiations leading up to the signing of a note in that manner would not under the circumstances in this case prove that the party signed as indorser, on account of the popular use of such terms, nevertheless it was error, in an action against such party as maker, to instruct the jury that "something more must have been said and done," in order to prove the agreement to treat the defendant as indorser, because the instruction was a comment upon a part of the evidence.

4. ———: ———: ———: **Failure of Proof.** In an action in two counts against the defendant as maker of two promissory notes, having signed the same on the back, while neither payee nor indorsee, the evidence is examined and *held*: that while it was sufficient to submit to the jury on the first count the question whether there was an agreement to treat the defendant as indorser, it was insufficient to submit that issue to the jury on the second count.

5. **WTINESSES: Husband and Wife: Common-Law Rule.** A husband or a wife at common law was incompetent as a witness in actions where the other was a party, or had a direct interest in the result of the litigation, and this disqualification remains except where removed by the statute.

6. ———: ———: ———. In an action against the indorser of a promissory note, the wife of the maker was not a competent witness because the liability of the maker for the amount and costs recovered of the indorser was an interest in the issue which would disqualify the wife at common law and the incompetency was not removed by any statute.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

REVERSED AND REMANDED (*with directions*).

*Cocke & Trigg* for appellant.

(1) From the terms in which the first and second instructions, given on behalf of plaintiff, were drawn, the jury might naturally infer that any agreement or understanding governing the liability of the appellant must have been had directly between her and the plaintiff; and that such an agreement or understanding communicated to the parties through a third person, would be of no force or effect. That the instructions were improper and misleading, has already passed into the realm *stare decisis.* Otto v. Bent, 48 Mo. 23. (2) (a) "The law only implies a particular undertaking in the absence of an actual one; and where the latter is shown there is no room for the former." Kuntz v. Tempel, 48 Mo. 78. (b) The presumption that an irregular indorser intends to incur the legal obligation which attaches to a joint maker of commercial paper should never be permitted to overthrow the actual intent of the contracting parties. Only in the absence of all extrinsic evidence, going to show the contrary, is the obligation of such an indorser held to be equivalent to that of a co-maker. Powell v. Thomas, 7 Mo. 440; Lewis v. Harvey, 18 Mo. 74. (3) (a)

The conversation had by Fred Loehr with Mrs. Donk, he being neither a party to the action nor having a direct pecuniary interest therein, might properly have been given through the testimony of his wife. Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885; 30 Am. and Eng. Ency. of Law (2 Ed.), 943-944, 1004. (b) Furthermore, it was error committed by the trial court in excluding Mrs. Loehr's testimony as to what was said by Wendlin Oexner to Mrs. Donk. Fenwick v. Bowling, 50 Mo. App. 516; Barhyte v. Summers, 68 Mich. 341.

*A. H. Baer* with *Carter, Collins & Jones* for respondent.

(1) Under appellant's answer, she was not entitled to offer any evidence as to the character in which she signed the note, because there is no allegation that there was any agreement, express or otherwise, between her and respondent that she should be treated as an indorser, and in the absence of such an allegation, her answer stated no defense. Otto v. Bent, 48 Mo. 26; Cahn v. Dutton, 60 Mo. 297; Rossi v. Schawacker, 66 Mo. App. 68; Schmidt Malting Co. v. Miller, 38 Mo. App. 254; Boyer v. Boogher, 11 Mo. App. 132; Mammon v. Hartman, 51 Mo. 168; Kingman & Co. v. Cornell-Tebbetts Co., 150 Mo. 282, 51 S. W. 727; Adams v. Huggins, 73 Mo. App. 140; Malone v. Fidelity & Casuality Co., 71 Mo. App. 1. (2) Our courts have uniformly held that the relation one bears to a note upon which he has placed his name on the back thereof, being neither payee nor endorsee, is prima facie that of maker, and that he may, by extrinsic parol evidence, show a different relation to the note. But before a court will hold that an agreement to fix another relation has been entered into, it is necessary for the party making such claim, to prove: (a) An understanding; (b) Expressly and knowingly entered into; (c) By both parties. The burden of proof, obviously, is on the party asserting the changed relation. Loehr

was interested in the result of this suit. This being true, his wife was disqualified to testify. Sec. 4656, R. S. 1899; Lynn v. Hockaday, 162 Mo. 123, 61 S. W. 885.

STATEMENT.—Plaintiff asked the court to give the following instructions:

"1.   Unless the jury believe and find from the evidence that at or before the time the note for $1,000 sued on in this case was delivered to plaintiff it was expressly agreed or understood between said plaintiff and the defendant Emilie Donk that in case said note was not paid at its maturity by Fred Loehr, Jr., and Wendlin Oexner on demand, that plaintiff would promptly notify said defendant of such demand and refusal to pay, then your verdict must be in favor of plaintiff on the first count of his petition. The court further instructs you in this connection that the use by the parties of the words 'indorse' or 'endorsement' or the fact that defendant wrote her name on the back of said note, do not of themselves constitute such a contract or understanding but something more must have been said and done by them as shown by the evidence, before you can find such contract or understanding existed between the parties. The court still further instructs you that it is not enough for you to find that the defendant understood or believed that she was to be notified by plaintiff if said note was not paid at maturity, but you must also find from the evidence that such was also the understanding of plaintiff, and unless you do so find then your verdict must be for plaintiff on the first count of his petition. If the jury find a verdict for plaintiff on the first count of his petition under this instruction, then you will assess his damages in the sum of one thousand dollars with interest at six per cent per annum from January 2, 1902.

"3.   The court instructs the jury that under the pleadings and all the evidence in this case, plaintiff is

entitled to recover on the second count of his petition herein and you will find for him in the sum of $500 with interest from the 11th day of March, 1902, at six per cent per annum on said second count."

The foregoing instructions were given by the court, to the giving of which defendant then and there excepted.

The court, of its own motion, gave the following instruction:

"2. If the jury believe and find from the evidence that plaintiff and defendant Mrs. Donk had an express agreement or understanding at or before the delivery of the $1,000 note in question, that plaintiff would notify her promptly in case said note was not paid at its maturity, then you will return a verdict in favor of defendant on the first count of the petition."

To the giving of this instruction the defendant excepted.

The defendant asked the court to give the following instructions:

"If the jury believe from the evidence that defendant Emilie Donk signed the notes sued on by plaintiff, as an indorser and not as a maker, then the verdict of the jury will be for said defendant, provided the jury further find that the plaintiff did not notify the defendant at the maturity of the said notes of the non-payment thereof, and provided the plaintiff knew or understood when the notes were delivered to him that defendant Emilie Donk had signed as an indorser.

"An admission made by either party against his or her own interest shall be considered by the jury as binding on the party making such admission."

Those instructions the court refused to give and the defendant excepted.

Under the instructions of the court the jury returned a verdict for plaintiff on each count of the petition and defendant appealed.

GOODE, J. (after stating the facts).—This action was originally instituted against Fred Loehr, Jr., and Emilie Donk as co-defendants. The case was in this court on a former appeal and is reported in 106 Mo. App. at page 412. It was instituted to enforce payment of two promissory notes; one for $1,000, dated January 2, 1900, and the other for $500, dated March 11, 1901. Plaintiff was the payee of the notes, which both fell due one year from their respective dates. A full statement of the circumstances under which the notes were executed is given in the former opinion. On the present appeal it is necessary to say that the question of fact at issue related to the understanding between plaintiff and Mrs. Donk as to the character in which the latter signed the notes. They were signed on the face by plaintiff's brother Wendlin Oexner and Fred Loehr, Jr., and on the back by Mrs. Donk, all the signatures being affixed before the instruments were delivered to plaintiff. As she was neither payee nor indorser, it would be presumed, prima facie, that she was a co-maker of the notes. But it is contended that the evidence shows an arrangement was made by which plaintiff agreed to accept the notes with defendant's signature and to treat her as an indorser and entitled to notice if the notes were not paid at maturity. The defense is that no notice was given and, therefore, she was exonerated. Plaintiff denied agreeing that defendant was to be regarded as an indorser or that he would give her notice if the notes were dishonored.

The testimony is not materially different from that given on the first appeal, and we then held there was sufficient evidence for the jury on the question of fact, so far as the first note was concerned. There is testimony going to show Mrs. Donk signed the first note as indorser and that it was agreed between her and the makers of the note, Loehr and Wendlin Oexner, at the time she signed it, that if it was not paid at maturity, plaintiff would notify her of the fact. Loehr swore he told plaintiff of this arrangement and plaintiff assented

to it and accepted the note with the understanding that notice was to be given to Mrs. Donk if it was dishonored.

The language in which the first instruction given at plaintiff's request is couched, has been condemned by the Supreme Court. The instruction told the jury, in effect, that in order to find the issues for defendant on the first note, they must find it was expressly agreed between plaintiff and the defendant, Emilie Donk, that in case the note was not paid at maturity by the principals, on demand, plaintiff would promptly notify defendant of the demand and refusal. In the negotiations leading up to the signing of the note by Mrs. Donk and the advancement of the money on it by plaintiff, those persons never saw each other. Mrs. Donk's signature was procured by Wendlin Oexner and Loehr; the latter said, on an agreement that she was to be notified if the note was not paid by the makers at maturity. The testimony to prove plaintiff agreed to notify her in case a default occurred shows the agreement, if made at all, was not made directly with her, but with Loehr and Wendlin Oexner, and that it took the form of an assent by plaintiff to the arrangement those parties had made with Mrs. Donk. It was held in a case whose facts, so far as the immediate point is concerned, were similar to those before us, that an instruction like the first one under review, was apt to mislead the jury by inducing them to think the payee's agreement to treat the person whose name was on the back of the note, not as maker, but as an indorser, would be invalid unless made personally by the payee with the indorser; whereas it was valid if made between the principal in the note and the person who signed on the back, provided it was assented to by the payee before he accepted the note. [Otto v. Bent, 48 Mo. 23.] On the authority of that case the instruction must be considered inaccurate. Its accuracy is challenged, also, because it told the jury that the use of the word "indorse" or "indorsement" did not of itself constitute a contract or understanding to treat de-

fendant as an indorser, *but something more must have been said and done* to justify the jury in finding there was such a contract or understanding. The use of the word "indorse" or "indorsement," in negotiations leading up to the signing of a promissory note, will not always suffice to prove that a person who was neither payee nor indorsee, but whose signature appears on the back of the note, was an indorser; and this was decided on the former appeal. This is so because the words are often used in a non-technical sense and merely to designate a person who writes his name on the back of an instrument, or the act of signing an instrument in that way. Such an indorsement the law regards as creating the liability of maker, if the person indorsing was neither a payee nor indorsee of the note and it was signed by him before delivery to the payee. Perhaps some instances might occur where the circumstances surrounding the transaction would tend to show the words "indorse" and "indorsement" were used in their strict legal sense. As to that we do not undertake to decide. In the present case plaintiff, in his talk with Loehr and Wendlin Oexner about lending them the money, said he would lend them a thousand dollars if they could procure Mrs. Donk's indorsement on the note. He admitted using the word; but swore he demanded security for the loan; and it is plain from his testimony that he did not know the difference between an indorser and a surety and meant that defendant should become surety for the loan. In a similar case, where the same word had been used by the plaintiff during the negotiation for the loan, it was said:

"Here there was no evidence of any contract or understanding between Simon L. Boogher and the plaintiff, that the latter was to be bound only as a technical indorser. It is true that the plaintiff consented to advance the money to D. R. Boogher on his note if he would get an indorser; but there is nothing to show that he

117 App.—45

meant indorser in the technical legal sense of the term, or that he meant anything more than what the word ordinarily, and according to its etymology, imports, a *name written on the back of a note*. And when D. R. Boogher returned to him with the note, with Simon L. Boogher's name written on the back of it, in the absence of any intimation to the contrary, the plaintiff clearly had the right to assume that Simon L. Boogher intended to assume the liability which the law affixed to his act." [Boyer v. Boogher, 11 Mo. App. 130, 132.]

In Schmidt Malting Co. v. Miller, 38 Mo. App. 251, one of the defendants, Spelbrink, defended on the same ground Mrs. Donk does. The payee of the note had not seen Spellbrink, but had agreed to advance the amount of it to the maker, if the latter would get Spellbrink to endorse it, and that was what the maker asked him to do. An instruction was requested in Spellbrink's behalf which, in legal effect, was the same as the first one requested by Mrs. Donk. The instruction was that if he put his name on the back of the note as indorser and received no notice of its dishonor, he was not liable. The court refused to give the instruction in that form, but amended it to read that if Spellbrink put his name on the back of the note, under an agreement or understanding with the payee thereof that he should be liable only as indorser, and no notice was given him of its dishonor, he was not liable. The complaint on appeal was of the modification of the instruction by the court. This court said in its opinion, that the note, when offered in evidence, made a prima-facie case against Spellbrink, and to avoid liability it was incumbent on him to show there was a contract or understanding between him and the payee "that he should be bound only as a technical indorser, or indorser in the legal sense, as the use of the word indorser by the parties to the contract does not of itself constitute such proof." Of the same import is Rossi v. Schawacker, 66 Mo. App. 67. Those authorities establish the proposition that the mere fact that the

words "indorser" and "indorsement" were spoken in a talk between a lender and a borrower regarding the procurement of a third party's signature to the note to be given for a contemplated loan, will not, under such circumstances as the present record discloses, suffice to show an agreement that if the third person signed the note, he should be considered a technical indorser. Nevertheless, we think the paragraph of the instruction referring to the effect of the use of the words in question, is objectionable for being a comment on part of the evidence, and also in saying that something more must have been said *and* done by the parties in order for the jury to find plaintiff agreed to notify defendant if the note was not paid when due by the principals. Something more done *or* said might have sufficed. The essential fact to be found is an agreement, not necessarily made by plaintiff and defendant directly with each other, but to which they both were parties, that defendant should be treated as an indorser. Stated in a concrete way, and with reference to the facts of the case, this is equivalent to saying that it was for the jury to find whether or not Wendlin Oexner and Loehr obtained defendant's signature pursuant to a promise that she should be given notice if the note was dishonored, and whether or not this undertaking was made known to plaintiff before he lent the money on the note, and he assented to it and lent the money with the understanding that he was to give notice to defendant in the contingency mentioned.

It was our opinion on the first appeal, that there was no evidence to warrant a finding that plaintiff agreed to give defendant notice in case the second note was not paid when due. In other words, no evidence to treat her as an indorser of said note and not a co-maker, which she appeared to be. We are of the same opinion after perusing the evidence contained in the present record. The second note was executed more than a year after the first one; and though there is testimony that Mrs. Donk

was given to understand by Loehr that she would be notified if the makers defaulted, there is no evidence that plaintiff was told of this arrangement. That nothing was said to him about it is conceded; but an argument that he agreed to treat Mrs. Donk as an indorser is raised on his statement that he made her indorsement of each note the condition on which he would lend the money called for by it. Plaintiff's entire testimony shows that he understood Mrs. Donk was to be a surety on the note and spoke of her "indorsement," and of her having "indorsed" the notes, in the sense simply that he was lending on the faith of her name. It was not plaintiff's use of those words which we held before and hold now, made a case for the jury on the first count of the petition; but the testimony of Fred Loehr that when he and Wendlin Oexner induced Mrs. Donk to sign said note, he agreed that she should be notified by plaintiff if a default occurred; which agreement plaintiff promised to observe. But there was no testimony that plaintiff promised to do anything of the kind regarding the second note, or was informed that Mrs. Donk expected notice of default. The two transactions happened at different times, separated by more than a year, and what transpired in connection with the first one cannot be made a part of the second, merely because the same parties were interested. The cases we have cited show conclusively that plaintiff's inquiry when he lent the money on the second note, regarding whether Mrs. Donk had "indorsed" it, did not prove he had agreed to give her notice if it was dishonored; and this is the sole circumstance relied on to show he made such an agreement.

Defendant offered to prove by Mrs. Loehr, wife of Fred Loehr, Jr., certain conversations between Mrs. Donk and her husband which had a tendency to show Mrs. Donk signed the note as an indorser. The court excluded this testimony on the ground that Mrs. Loehr was an incompetent witness and that ruling is assigned for error. We understand that though Fred Loehr, Jr.,

was originally a co-defendant, he made no defense and we suppose judgment by default was entered against him. It hardly can be said that he is a party to the present litigation, which is between plaintiff and Mrs. Donk. If his wife was not disqualified as witness on the ground that he was a party, she could be disqualified only because he had some interest in the result of the litigation between plaintiff and defendant, which would be affected adversely by plaintiff's obtaining judgment against defendant. This question of Mrs. Loehr's competency goes back to the common law. A husband or wife remains incompetent to testify in litigation if the other is a party to the record or a party in interest, except in so far as our statutes have removed the disqualification; and it is not removed by the statutes in the circumstances presented by the present record. Mrs. Loehr was not the agent of her husband in any of the transactions involved, nor did any other condition exist which entitled her to testify under the provisions of the statute. [R. S. 1899, sec. 4656.] Now at common law a husband or wife was incompetent as a witness in actions where the other was a party or when, though not a party to the record, the other had a direct interest in the result of the litigation. [1 Greenleaf, Evidence (16 Ed.), sec. 341.] It is argued that Loehr has no interest in the result of this case because he is liable for the amount of the notes in any event. That is to say, he is liable to plaintiff whether the latter obtains judgment against this defendant or not. But we think Loehr has an interest which is adverse to plaintiff's recovery against defendant, for this reason: if plaintiff obtains judgment against Mrs. Donk and the latter pays the judgment, she will have a right of action over against Loehr for the amount paid. Mrs. Donk is an accommodation indorser, which gives her the status of a surety in many respects, as against the principals. [Weimer v. Shelton, 7 Mo. 238; Noll v. Oberhellman, 20 Mo. App. 336.] And like any other surety, if she is compelled by action to pay the

debt of her principal, she may recover the costs of the action as well as the amount of the judgment she paid. [2 Sedgwick, Damages (8 Ed.), sec. 803; Baker v. Morten, 3 Barb. 634, 642; Hubbly v. Brown, 16 Jones 70.] We do not need to decide whether in Missouri an accommodation indorser can make the principal pay damages under the statutes, as a surety may. [R. S. 1899, sec. 4504, 4508.] An ordinary indorser cannot. [Clark v. Barrett, 19 Mo. 39; Devinney v. Lay, 19 Mo. 646.] In some States an accommodation indorser has the full rights of a surety. [1 Rand., Commercial Paper (2 Ed.), sec. 475.] Presumably it is immaterial to Loehr whether he is compelled to pay the amount of the notes to plaintiff or to defendant; and that far his interest is equally balanced. But in legal contemplation it preponderates against plaintiff in the present action because, if plaintiff succeeds in collecting the notes from Mrs. Donk, Loehr will be exposed to an action at law to recover, not only the amount of the notes, but the costs of plaintiff's proceedings against her and which she is compelled to pay. This is an interest which at common law would disqualify him and his wife as witnesses, since any direct interest in the result of the cause, however small, renders a person incompetent to testify. The following decisions are directly in point: Hubbly v. Brown, supra; Rackley v. Sanders, 1 Ga. 258; Vason v. Merchants Bank, 2 Ga. 140; Scott v. McLellan, 2 Maine 199; Hopkins v. Bank, 7 Cow. 650; Bennett v. Dowling, 22 Texas 660; Richards v. Griffin, 5 Ala. 195; Kelly v. Lank, 7 B. Mon. 220, 226; Riddle v. Moss, 11 U. S. 206; Neda v. Simon, 10 La. Ann. 700. Of course Loehr's incompetency is removed by our statute, which provides that no person shall be disqualified as a witness by reason of his interest in the event of a cause. [R. S. 1899, sec. 4652.] Though this statute removes the incompetency of the husband to testify in a case in which he is interested, it does not remove the incompetency of his wife to testify in such a case. [Haerle v. Kreighn, 65

Mo. 202; Joice v. Brenson, 73 Mo. 28; Kischman v. Scott, 166 Mo. 214, 65 S. W. 1031.]

The judgment is reversed and the cause remanded with a direction to the circuit court to retain the verdict on the second count; that is, on the note for five hundred dollars; retry the issues raised in respect of the other note, and at the conclusion of that trial enter judgment in accordance with the verdicts. All concur.