## PHELPS and others *vs.* GARROW.

Where the complainants sold to S. a bill of goods at a credit of four months, upon his promise that if they would draw upon him for the amount, payable at the Bank of Auburn at four months, he would get G. to endorse the draft as his surety and return it to them, and the complainants drew a draft accordingly payable to the order of G., who endorsed the same, supposing that by so doing he became security to them for S., which draft was sent by the complainants to the bank for collection, but the acceptor having failed, it was protested, and afterwards was taken up by G, the endorser, who brought a suit at law thereon against the complainants as the drawers; *Held* that the court of chancery could not relieve the complainants, if G. was not liable at law to pay the draft as surety for S., although he expected and intended to become such surety by endorsing the draft.

An intention of a third person to become the surety of a debtor by endorsing a draft drawn in his favor, upon the debtor by the creditor, the endorsement being without consideration, cannot render the endorser either legally or equitably liable to the drawer for the payment of the draft; as nothing

short of a written agreement can render him liable as a surety under the
provisions of the statute of frauds.

1840.

Phelps
v.
Garrow.

April 7.

THIS was an application to dissolve an injunction upon
bill and answer.   The facts upon which the question arose
were briefly these : The complainants sold to J. M. Smith,
of Auburn, a bill of goods, upon his application to them
by letter, stating to them that if they would send the goods
and draw on him for the amount at four months, payable at
the Bank of Auburn, he would get the defendant to en-
dorse the draft and send it back to them.   They sent the
goods, and drew upon Smith accordingly for $401,02, in
favor of the defendant N. Garrow ; who upon being appli-
ed to by Smith, endorsed his name upon the draft and gave
it back to him, and Smith sent it to the complainants.
The draft was afterwards sent to the Bank of Auburn for
collection, and Smith having failed, it was protested for
non-payment.   Garrow, the defendant, afterwards took up
the draft at the bank and brought his action thereon against
the complainants, as drawers of the same.   Whereupon
they filed their bill in this cause, praying a perpetual in-
junction against his proceedings at law.

*A. Taber,* for the complainants.

*O. Allen,* for the defendant.

THE CHANCELLOR.   The complainants drew the draft in
this case, payable to the order of the defendant, supposing,
as they allege, that his endorsing it would make him liable
to them as a surety for Smith the drawer.   And the de-
fendant admits that he endorsed his name upon the draft,
at the request of Smith, supposing that by so doing he had
thereby become liable to pay the amount of the draft to the
complainants, as surety for Smith, in case the same was not
paid by the drawee.   The question therefore arises whether
this court can relieve the complainants against this mistake
in law, so as to charge the defendant as a surety for a debt
for which he intended or expected to become liable, but for

which he did not in fact contract any legal liability to them. Upon a full consideration of the case I have not been able to discover any equitable principle which can authorize this court to interfere, if the complainants have no legal defence to the suit which the defendant has brought against them to recover back the money which he paid to the bank as the endorser of this bill. It is perfectly clear that the payee of a draft who endorses the same does not contract any legal liability to the drawers, in case of the failure of the acceptor to pay the draft at maturity. But on the contrary, if such endorser is obliged to pay the draft to a subsequent holder thereof, as Garrow was compelled to do in this case, he may sue the drawers upon the bill to recover the amount from them. The intention of the defendant to become security for Smith, or rather his supposition that by endorsing the draft he had become such security, could not make him either legally or equitably liable to the complainants as such security, without consideration. And nothing short of a written agreement could render him liable as a surety for Smith, under the provisions of the statute of frauds. Even if the complainants had sold their goods upon the faith of a previous promise by the defendant, that he would become legally bound as surety for the payment of the debt, there might be still a difficulty in rendering him liable consistently with the provisions of the statute of frauds; unless he had been guilty of some fraudulent device which would authorize a court of equity to interfere. Here, however, the defendant did not even authorize his name to be used until after the goods had been sent to Smith. His mistake, therefore, in supposing he had become a surety for Smith, by endorsing the draft, when he had not become so either in fact or in law, raises no equity in favor of the complainants against him.

The injunction must therefore be dissolved; leaving the complainants to their defence at law, if they have any such defence to the suit against them on the draft.