McKinney, J.,
delivered the opinion of the Court.
The plaintiffs, who are commission merchants of New Orleans, brought this action of assumpsit in the Common Law Court of Memphis against Caleb Worley and the defendant in error Richardson jointly, as the drawers of a bill of exchange accepted by the plaintiffs for the accommodation of Worley and Richardson, and paid at maturity by them with their own funds. The following is a copy of the bill of exchange:
“Exchange for $5000. Memphis, Term., May 6th, 1854.
“ Seven months after date of this our first of exchange, (second unpaid,) pay to the order of H. C. Walker five thousand dollars, value received, and charge to account.
“Your obedient servants,
“ Caleb WoRley,
“ C. G-. Richaedson.
“To Messrs. S. O. Nelson & Co., New Orleans, La.”
The bill was endorsed by Walker, the payee, and also by Pickett, McMurdo & Co. The declaration contains the common counts, for money paid and advanced by the plaintiffs for the use of the defendants; to which the defendants jointly pleaded non assumpsit. Judgment in the Court below was in favor of the plaintiffs as to Wor-ley, but against them as to Richardson, and to reverse the judgment as to the latter the case is brought to this Court by the plaintiffs.
*310 The foregoing bill, and another of the same date and amount, -were drawn at Memphis, where Worley and Richardson both resided, and whore Walker, the payee — who was a member of the firm of S. 0. Nelson & Co.— likewise resided.
It is left in doubt from the proof whether the bills were drawn for the purpose of obtaining an advance of money upon them from Nelson & Co., or for the purpose, in whole or part, of procuring an extension of credit, for the period the bills had to run, upon a preexisting debt due from Worley alone to Nelson & Co. But be this as it may, it is not important' in our view to the determination of the question as to the liability of Richardson,
The proof establishes that Walker, with whom on behalf of the plaintiffs the arrangement -was made for the acceptance of the bills, refused to accept them, when applied to for that purpose before the bills were drawn, unless Worley would give the name of some responsible man on the bills as a joint drawer with him; and that the agent of Worley proposed to give the defendant Richardson, and Walker agreed to accept him; and thereupon the bills were drawn by Worley and Richardson jointly, and were accepted by the plaintiffs on the faith and credit of the joint drawers.
The proof also establishes that Richardson was a mere surety for the accommodation of Worley, and that this fact was known to the plaintiffs at the time they accepted said bills. It is likewise proved that the drawers failed to furnish funds for the payment of the bill sued on, and that it was paid at maturity by the plaintiffs with their own money.
On thi@ state of facts, it is insisted by the counsel of *311 Richardson that he is not liable to the plaintiffs in this action. The argument in substance is, that Richardson •was merely a surety for Worley, as was known to the plaintiffs; that his liability was upon the bill alone, as drawer; that he could only he charged in an action founded on the hill itself, and that only in favor of the payee or an endorsee or holder thereof, hut not in favor of the drawees, because a hill of exchange imports no obligation on the part of the drawer to pay the amount of the bill to the drawee; and, furthermore, because, upon taking up the hill by the drawees, it had performed its office, and became a nullity as to all the parties. The argument concedes that payment of the bill by the drawees with their own money would, in law, raise an implied promise, as against Worley the principal, to reimburse them the amount paid in taking up the bill; but it is insisted that no such promise can be implied in their favor as against Richardson the surety drawer, whose only liability was upon the bill itself. And it is further insisted that if such a promise could be implied on the part of Richardson, or even if an express promise by parol were proved to have been made by him — that as surety he would repay the money advanced by the plaintiffs in taking up the bill — the promise in either case would be a collateral undertaking on his part for the debt or default of another, and consequently void under the statute of frauds. And these principles are recognized in several New York cases referred to in the argument. Wing vs. Terry, 5 Hill, 160; Suydam vs. Westfall, 4 Hill, 211; Griffith vs. Reed, 21 Wend., 502; Phelps vs. Garrow, 8 Paige, 322.
His Honor, in his instructions to the jury, adopted *312 the doctrine of these cases, and held the law to he as assumed in the argument for the defendant.
We cannot assent to the correctness of this doctrine. In our opinion, it is not supported either upon sound principle or authority.
It may he remarked at the outset of the discussion, that, so far as respects the liability of Richardson in the .present action, we deem it of no importanpe whether the hill was drawn to raise money upon it, or to obtain an extension of time upon a prior indebtedness on the part of Worley to the plaintiffs. In either aspect, we regard the defendant Richardson as equally liable.
The contract was a lawful one, fairly entered into, and founded on a sufficient consideration. The plaintiffs refused to accept the bill without the additional name of a responsible person as a joint drawer. This was known to Richardson, as we are warranted in assuming from the proof in the record before us; and with this knowledge, as an inducement to the plaintiffs to accept the bill, he agreed to become and did become joint drawer of the bill with Worley. Upon the credit of his name mainly, as a co-drawer, the plaintiffs accepted the bill. By his voluntary act he caused the plaintiffs to do what they would not otherwise have done, and he cannot complain of being held to all the liability which the law attaches to his act. He assumed by his act all the liability created or implied by law on the part of a joint drawer of a bill of exchange, as well in respect to the acceptors as all other parties. He must be held to have known the law by which the nature and extent of his liabilities as drawer were defined, and to have intended to take upon himself whatever obligations or liabilities, *313 express or implied, belonged to the relation in which he placed himself. He must be taken to. have put his name on the bill in view of the well-established principle of law, that if the drawer has no funds in the hands of the drawee to meet the payment of the bill at maturity, in consequence of which the latter has it to pay with his own funds, a right of action instantly arises in his favor, not indeed upon the bill, but in assumpsit, to recover the money thus advanced, founded upon an implied promise. This is one of the known, fixed, legal consequences resulting from the relation of drawer. When, by reason of the want of funds of the drawer’s in his hands, the drawee has to pay the bill, the relation between the parties is reversed: the drawee, instead of being debtor, becomes creditor of the drawer for the money advanced.
The argument that the surety drawer’s liability is created by the act of placing his name on the bill; and that this act imports no obligation or promise on his part to the drawee to refund to him in case he should pay the bill; and that to hold him liable to do so upon an implied promise is to change the nature of his undertaking, and to make him liable, not upon his contract, but aside from it, is, as it seems to us, altogether unsound. The promise in such case is an implied term of the contract, and equally so on the part of the surety drawer as of the principal. The position that Richardson’s liability arises upon the bill, and that no action can be maintained against him except upon the bill, is, we think, untenable in every view of the case. It assumes a distinction between the principal and surety drawer as regards the drawees — conceding at the same time that they stand upon exactly the same ground as to all *314 other parties — which has no just foundation to rest on. On what principle is it that the surety drawer is liable, in like manner with the principal, to the payee, endorsee, or holder of the bill? Certainly not because the terms and conditions of his liability to them respectively are expressed on the face of the bill. The simple act of signing his name to a bill of exchange does not express the nature or legal effect of the act, or the obligations thereby imposed on the drawer. It is, in form, a mere request to the drawee to pay a sum of money to the person named therein, or to bearer; that is all that is expressed. The duties and liabilities of the drawer growing out of the act are left to be implied. It is "implied that the drawee has funds of the drawer in his hands to meet the payment of the bill; and in this view he is regarded as debtor, and primarily liable to pay the bill. So the drawer impliedly engages that the drawee will accept and pay the bill at maturity. And he further impliedly engages that, on failure of the drawee to pay, he will himself, on due notice, pay the bill to the holder thereof. Yet none of these undertakings is expressed on the face of the bill. They are raised by implication of law, just in the same way in which the further obligation is created, that if, for want of funds of the drawer, the drawee should be required to discharge the bill, the drawer will refund to him the amount so advanced. And all these obligations the drawer, whether principal or surety, takes upon himself by the act of drawing a bill. The surety drawer becomes chargeable with every obligation and liability which, the law imposes upon the principal, as well those that are implied by law as those that are expressed; and this is so in regard to all the *315 parties, the drawee or acceptor no less than the payee, endorsee, or holder of the hill. This must necessarily he so. Upon general principles of law, the liability of a surety is coextensive with that of the principal; and it is wholly unimportant whether the liability arises out of an express or implied undertaking on the part of the principal ; the surety is as much hound for the implied as for the express promises and undertakings of his principal : in this respect the law knows no distinction.
The argument for the defendant rests upon the erroneous assumption that, as respects the drawee of a hill, the liability of a surety drawer is different from that of his principal; or rather that, as to the drawee, the surety drawer incurs no liability in any event. And this results from another no less erroneous assumption, namely, that the surety’s liability to the drawee is not as much an implied thrm of the contract as are his liabilities to the payee, endorsee, or holder of the bill. This reasoning, we think, is alike opposed to principle and authority.
The legal principle which renders the principal drawer liable to the drawee for the money paid by him to the holder in discharge of the bill, applies equally to the surety drawer. It is admitted that both are equally liable to the holder of the bill; and being so liable, the money paid by the drawee in taking up the bill is paid for the use and benefit of both alike. By the payment, the surety, equally with the principal, is exonerated from his acknowledged liability to the holder; and as to both, the bill is thereby discharged and becomes a nullity. This is the ground upon which the drawee’s right to recover the amount paid by him in discharge of the *316 bill rests; and the application of the principle is precisely the same to the surety as to the principal drawer. See Story on Bills, § 420; Chitty on Bills, 80, (ed. of 1849;) 2 Denio’s Rep., 205; Browder vs. Phillips, 16 Peters’ Rep., 121.
From the foregoing view of the law, it follows that the statute of frauds can have no application to the case. The surety standing on the same footing as his principal in all respects, it is clear that his promise or undertaking is an original and not a collateral undertaking. The consideration to the principal is the consideration to the surety; and if it be sufficient as to the former, it will be equally so as to the latter. It is not required that any separate consideration should pass directly from the creditor to the surety, distinct from that which passed from him to the principal. If the principal drawer received the amount of the bill; or if the consideration of the bill was forbearance, or an extension of credit upon a preexisting debt due from the principal; in either case, the consideration would be as operative in respect to the surety as to the principal drawer. It is well settled that forbearance, and, in general, a waiver of any legal right at the request of another, is a sufficient consideration for a promise. So a benefit to the party making the promise, or any detriment to the other party, is sufficiént. If the consideration gives to the person making the promise a benefit or advantage that he did not possess before, and would not have possessed but for the promise, then it will be regarded as an original promise, and therefore will be enforced, although not in writing. Nor is it matei’ial that the party making the promise should have *317 a direct interest in tbe matter, for tbe benefit to tbe principal will be taken to extend to bim, and as against bim, in like manner as against tbe principal, it is enough to constitute a valid consideration, that there was, upon this inducement, tbe waiver of an existing legal right, by tbe surrender of which, and consequent delay, tbe creditor is injured. Parsons on Contracts, 368, 497, and cases referred to in notes.
Our conclusion is that tbe judgment is erroneous, and it will be reversed, and tbe case be remanded for a new trial.