HORACE PRIOR and another, Executors of HENRY PRIOR, deceased,

*v.*

GIBSON F. WILLIAMS, HARRIET H. CHAMBERLAIN and WILLIAM B. CHAMBERLAIN.

A court of equity has authority to correct mistakes in written instruments, even as against sureties.

When a mortgage is executed to secure the payment of a note, but, by mistake, the note is misdescribed in the mortgage, equity will reform the instrument by correcting the misdescription.

## *Appeal from General Term.*

ON the 23d day of November, 1859, the defendant, William B. Chamberlain, made his promissory note of that date at three months, to the order of and indorsed by defendant, Harriet H. Chamberlain, his mother, as accommodation indorser. Plaintiff's testator advanced the money on the note to the makers. The maker was desirous of having the time of payment extended, and before it fell due he agreed with the testator to extend it for one year from its date, provided he procured from his mother a mortgage on some property in Buffalo to secure its payment.

This arrangement was made known to his mother, and she assented to it, and on the tenth day of December, 1859, within a month from the execution of the note, she executed the mortgage accordingly. The mortgage was dated on the twenty-third day of November, 1859, purporting to be in consideration of one thousand five hundred ($1,500) dollars, and was conditioned to pay that sum, "according to the condition of a certain promissory note bearing even date herewith, made by the said Harriet H. Chamberlain and William B. Chamberlain of the city of New York, payable one year after the date thereof, with interest."

This mortgage was accepted and received by the testator "in pursuance of said agreement, that the time of payment of said note should be extended as aforesaid," believing said mortgage to be a valid security, and by inadvertence and mistake he failed to observe that said mortgage did not correctly describe the said note.

The mortgagor also intended to secure this note by said mortgage, but it was misdescribed through some mistake.

These facts are thus found by the referee, with many others not deemed material to the decision of this case. The testator waited for more than a year and the note was not paid. Long thereafter he discovered the mistake in the condition of the mortgage, and this bill was filed to correct and reform the mortgage according to the contract. The Superior Court decreed the reformation to be made. From that decree, affirmed at the General Term, the defendants appealed to this court.

*J. D. H. Chamberlain*, for appellants.

*Wm. Dorshiemer*, for respondents.

PECKHAM, J. The only point made by the appellants requiring examination is whether this mistake in this mortgage can be corrected by the court, as the mortgagor was a mere surety.

The appellant does not urge that the mortgage is already sufficient, as perhaps she might. See *Jackson* v. *Brown*, 7 Cow., 13, and cases cited.

Counsel referred to the remarks of the chancellor in *The Ontario Bank* v. *Mumford*, 2 Barb. Ch., 596, at 613. It is true the chancellor used language which the case, as finally disposed of, did not require. He remarked that a bond could not be reformed as against a surety, "even though it was his intention to bind himself at the time the bond was executed. For the statute of frauds requires an agreement in writing to bind a surety, and if the surety has not already executed a valid agreement to answer for

the debt or default of his principal; this court cannot compel him to execute such an agreement, upon the ground that he has attempted to do so, but has failed of accomplishing his object by mistake or inadvertence."

With deference, I do not think it an answer to a bill for the *reformation* of an instrument, that it would have been invalid if not in writing, and that, therefore, it cannot be reformed. Upon such a doctrine, a deed of land or a mortgage could not be reformed even against a principal, because either is involved if not in writing.

A party sells a farm of one hundred acres, but by a mistake of the scrivener the deed conveys but fifty. The mistake is not discovered until after the deed is accepted and the money paid by the grantee. This doctrine would prevent the reformation of that deed. The right to grant relief in such a case will scarcely be denied. But the proof of the mistake must be entirely clear and satisfactory.

In *Phelps* v. *Garrow*, 8 Paige, 322, where one Smith had purchased goods of the plaintiffs under an agreement to give Garrow's indorsement on their draft on Smith therefor, payable to Garrow's order. The draft was made and indorsed accordingly. Garrow took up the draft and then brought his action against the plaintiffs as drawers. They then filed their bill against Garrow to restrain the further prosecution of that suit, not to reform the draft. The court dismissed the complaint, holding that Garrow was not liable either at law or in equity, though he admitted that he intended to become liable by indorsing the draft.

The courts now would hold him liable under such facts at law.

There, however, was no mistake of fact, and courts have frequently recognized the force of a distinction between a mutual mistake of law and of fact, although, as a general rule, there is little ground for the distinction. In most cases there is as good ground for relief when both

parties have acted under a mistake of the law, as there is where the mistake is confined to the fact.

The mistake found here is one of fact. The other cases cited by the appellants of *Walsh* v. *Bixby*, 10 Johns., 180; *Dobbins* v. *Bradley*, 17 Wend., 422; *Wing* v. *Perry*, 5 Hill, 160; *Birkhead.* v. *Brower*, Id., 634, only illustrate the extreme strictness with which contracts of sureties are construed, and that they will not be extended beyond their letter. They have no pertinence to the question.

The power of a court of equity to reform an instrument as against a surety is fully recognized and declared in Story's Eq., Fol. 1, § 164.

In *Wisen* v. *Blochley*, 1 Johns., 607, where a bond given by a surety for the guardian of an infant was taken by the surrogate in the name of the people, instead of the infant, the court corrected the mistake. The chancellor remarking that he had no difficulty in saying that it was within the ordinary jurisdiction of that court to correct such a mistake by holding the party according to his original intentions. That was in harmony with good morals as well as with sound law.

So in *Weaver* v. *Shryock*, 6 Serg. & R., 262, 264, Ch. J. TILGHMAN affirmed the same doctrine as against a surety.

Many cases may be conceived where the grossest injustice would result if courts had no power to correct mistakes as against sureties. Mistakes are as likely to occur with them as with others, and there is no sound principle that prevents their being compelled to act justly and honestly where the surety is aware of and assents to the purpose to which his obligation is to be applied, and it is so used, though without consideration except that advanced to the principle, equity will reform any mistake of fact so that the obligation shall fulfill its purpose.

In the case at bar, from the facts disclosed, the testator would probably have been able to collect his note at maturity had he not relied upon the mortgage. Upon the

mortgage nine months longer time was procured with the knowledge of the mortgagor. It was given by her for that precise purpose, and so accepted by the mortgagee. If by mistake in the description of the note or by any other mistake therein misleading the mortgagee, it has failed to execute its purpose, the courts have the power, and we think it their duty to reform the instrument so as to carry out the intent of the parties.

The judgment of the court below should be affirmed.

WRIGHT, J. The briefs of counsel are confined principally to a discussion of the facts. We do not look into the evidence to determine whether the referee has found the facts correctly: our province is to take the facts as found by the referee, and determine whether he has or has not drawn correct legal conclusions from them. Hence no question is before us as to the sufficiency of the evidence of notice of protest of the note, that the mortgage is claimed to have been given to secure, to charge Mrs. Chamberlain as indorser. The referee distinctly finds that the note was protested for non-payment by the proper officer, and due notice given to her. Nor is the attempted ground of defense in the case, that the note was fraudulently diverted from its purpose, and, therefore, Mrs. Chamberlain, an accommodation indorser, is discharged from liability. True, the note was made by filling up one of the notes previously indorsed in blank by Mrs. Chamberlain, for the accommodation of the firm of Prior, Holcomb & Co., of which William B. Chamberlain, her son, was a member. But Henry Prior, the holder and owner of the note, was not one of the firm, and the finding is, that upon the note, he, in good faith, lent and advanced to the maker, Wm. B. Chamberlain, on the day of its date, the sum of fifteen hundred dollars, and the money was by Chamberlain paid into the firm as a contribution by him to the capital thereof. The principle, that a *bona fide* holder for value may recover against

an accommodation indorser, even when there has been a misappropriation of the paper, if there was any in this case, is too familiar to require illustration. The note was misdescribed in the mortgage in a single particular. It was described as being payable one year after date, whereas, it should have been three months after date. The sole question is, whether, upon the facts before us, a reformation of the instrument, in this respect, was error. I think it was not. They were in substance these: Wm. B. Chamberlain, as has been stated, was a member of the firm of Prior & Co., of the city of New York. Harriet H. Chamberlain, his mother, resided at Buffalo. The note in question was made by the son, and indorsed by Mrs. Chamberlain, to raise money to contribute his proportionate share of increase capital of the firm. It was for $1,500, dated 23d November, 1859, and payable to the order of Harriet H. Chamberlain, three months after date thereof. About the day of its date, it was negotiated by Wm. B. Chamberlain, the maker, to Henry Prior, the plaintiff's testator, who lived on Long Island, and in no way connected with the firm. Some days after Prior had loaned or advanced the money on it, an arrangement was made between him and Chamberlain to the effect that Chamberlain should obtain a mortgage from his mother to secure the payment of this note, and that the loan should be thereupon extended for a year from the date of the note. Thereupon, Chamberlain wrote to a brother of his, at Buffalo, who resided with his mother, informing him, in substance, that a note made by him, and indorsed by his mother, dated November 23d, 1859, for $1,500, and payable three months from its date, was outstanding, and that he had arranged with Horace Prior, so that by giving her mortgage to secure it, a year's time from the date thereof could be obtained thereon; and requesting him to draw such mortgage to Horace Prior, and get his mother to execute it. The contents of this letter, on being received, was made known to Mrs.

Chamberlain. Shortly after the receipt of the letter, and on the 10th December, 1859, Mrs. Chamberlain executed, acknowledged, and forwarded by mail to Wm. B. Chamberlain, at the city of New York, a mortgage upon the premises described in the complaint (and which is the instrument sought to reform); bearing date on the 23d day of November, 1859, in which Horace Prior was named as mortgagee, expressing a consideration of $1,500, and conditioned as follows: "Provided always, and these presents are upon the express condition that if the said Harriet H. Chamberlain, party of the first part, her heirs, executors or administrators, shall well and truly pay, or cause to be paid to the said party of the second part, his heirs, executors, administrators or assigns, the just and full sum of fifteen hundred dollars, with interest from the date hereof, according to the condition of a certain promissory note, bearing even date herewith, made by the said Harriet H. Chamberlain and William B. Chamberlain, of the city of New York, payable *one year after the date thereof*, with interest, then these presents and the said promissory note shall cease and be null and void." The mortgage also contained a power of sale to be effective in case of the non-payment of the said sum of $1,500, or of the interest thereof, or any part thereof, "at the time above limited for the payment thereof." Mrs. Chamberlain, as the referee finds, in executing this instrument, intended to execute a mortgage to secure the payment of the note held by Henry Prior, the plaintiff's testator, one year from the date thereof, in order to enable her son, Wm. B. Chamberlain, to obtain the nine months' additional time for its payment; and that the note was misdescribed in the mortgage inadvertently, and by mistake of Mrs. Chamberlain. This mortgage was forwarded by mail to Wm. B. Chamberlain. Soon after receiving it, he handed it to Horace Prior, who acted as the agent of Henry Prior, and by his authority, in making the agreement for the extension of the loan, and in receiving the

mortgage. Horace Prior objected to the mortgage, that it was made to him instead of Henry Prior, and suggested that it should be sent back for correction; but upon being advised by counsel that he could assign the mortgage to Henry, and that this would be as well as to have it sent back to be corrected, he withdrew his objection and accepted the mortgage, and on the 13th of December, 1859 (three days after its execution), assigned and delivered the mortgage to Henry Prior, who continued to hold the same up to the time of his decease. The mortgage was accepted in pursuance of the agreement that the time for the payment of the note, on giving the mortgage, should be extended for one year from its date. Horace Prior, the agent, and Henry Prior, the holder and owner of the note, believed the mortgage to be a valid security, and, by inadvertence and mistake, failed to observe that it did not correctly describe the note. When the note by the terms thereof became due and payable, it was duly presented for payment, and payment thereof demanded and refused, and thereupon, on the same or ensuing day, notice of such presentment, demand and refusal was given by Henry Prior, through a notary public, to Mrs. Chamberlain, the indorser. On or about the 23d of November, 1860, the note and mortgage, with the interest thereon, remaining unpaid, Mrs. Chamberlain and her son, William B. Chamberlain, gave their promissory note, payable four months from its date, for the first year's interest. The note was never paid, and when this action was brought to redeem the mortgaged premises from the defendant Williams, the assignor of a senior mortgage, the entire sum intended to be secured by the mortgage in question remained unpaid. It is not clear that it was essential to reform the mortgage according to the prayer in the complaint, as it seems scarcely to have been a controverted question that the particular note in evidence was the one that mortgage was given to secure. But, if essential, the referee decided

correctly in granting the relief. The rule is, that a court of equity will reform a deed or writing if, by accident or mistake, it does not express the real intention of the parties. This case, I think, is one for the application of the rule. The plaintiff's testator loaned to William B. Chamberlain $1,500 on his note, indorsed by Mrs. Chamberlain, payable three months from date. Subsequently, it is agreed between them, that Chamberlain should obtain a mortgage from his mother, who was a party to the paper, to secure the payment of the note, and thereupon the loan should be extended one year from the date of the note. Mrs. Chamberlain, intending to carry out this agreement, executes a mortgage, and the plaintiff's testator accepts it, believing it to be in accordance with the agreement. By mistake or accident, the mortgage was drawn so as to describe a note which was never in existence. The parties intended by the mortgage to secure the payment of the note in question, but the writing varies from their intent by expressing something differing in substance from the truth of that intent. It is a clear case, it seems to me, for the interference of a court of equity to reform the deed, so as to make it just what the parties intended it should be.

I am for an affirmance of the judgment.

Judgment affirmed.