ELLEN M. CHAMBERS, Appellant, v. JOHN J. BRADY AND ROSE S. BRADY.

Undue Influence: PARENT AND CHILD: *Evidence—Deeds.* Inference of undue influence from the fact of an aged parent's conveying all his property to two children, with whom he lived, is overcome by evidence that he stated to a lawyer what he wanted, saying that he did not want to make a will, and did not need to make a provision for future support, as he could trust his children; that after executing the deed, he gave it to his daughter, and requested her to record it; that thereafter, to an assessor and others, he explained the matter and said that he wanted the grantees, who had been very good to him, to have the property for taking care of him; and that he objected to the marriage contracted by the child not provided for, and believed her husband to be a drunkard and a spendthrift.

*Appeal from Johnson District Court.*—Hon. M. J. Wade, Judge.

Friday, January 22, 1897.

Suit in equity to set aside and cancel a deed made by one Thomas Brady, in his lifetime, to the defendants. It is claimed that Brady was weak and unsound of mind at the time the conveyance was made, and that the defendants procured the execution and delivery thereof by fraud and undue influence. The court dismissed the plaintiff's petition, and she appeals.—*Affirmed.*

*Joe A. Edwards* and *W. J. Baldwin* for appellant.

*Ranck & Bradley* for appellees.

Deemer, J.—Thomas Brady was the owner of one hundred and sixty acres of land in Johnson county, valued at about the sum of six thousand dollars. He, with his family, had resided thereon, at the time of his death, more than forty years. His wife died in the year 1874, and his three children, who are the parties to this litigation, remained with him until the marriage of plaintiff, in the year 1881. After the plaintiff's marriage, she left the old homestead, and took up her residence with her husband. The defendants continued to live with their father upon the premises in controversy until his death, which occurred in July of the year 1894. On the fifteenth day of July, 1893, he executed the deed which is sought to be avoided in this case, and at his suggestion the deed was recorded on the same day. Brady was eighty-three years old at the time he died. He had seen service in the Mexican war, was a man of good habits, and for a man of his age was physically strong when he died.

The appellant claims that, at the time the deed was executed, Brady was suffering from senile dementia, and that, while he might not have been a fit subject for the insane commissioners to take in charge, yet he was so weak of intelligence that the conveyance made by him should be avoided. Appellant also claims that the deed was procured through fraud and undue influence practiced by the appellees upon their father. These claims are denied by the appellees.

The first question to which we will give attention is that relating to the alleged unsoundness of mind of the grantor. It is practically undisputed that the deceased was a well preserved man, physically, for one of his age, and it is conclusively shown that he was a man of strong convictions and of great firmness of character. He lived, it is true, beyond the period usually allotted to man, and was somewhat childish during the latter years of his life, and, it may be, was suffering from senile dementia at the time he died. But a careful examination of the evidence leads us to the conclusion that at the time he made the deed in question he had sufficient mental capacity to comprehend the nature and quality of his act, and to proceed with judgment and discretion in disposing of his property. It would be a useless task to set forth all, or even a considerable part of the evidence from which we reach our conclusions. It is sufficient to say that we think the plaintiff has failed on this issue, and that the great preponderance of the evidence is in appellees' favor. Appellant relies quite largely upon the opinions of experts, based upon hypothetical questions propounded to them. These questions embodied all the peculiarities and idiosyncrasies of the man, covering a long period of time, and when so propounded as to indicate that these characteristics and singularities were related in point of time, and were connected, they were misleading and not a true test

of mental strength. It is questionable whether any-
one could meet the requirements of such a test. But,
however this may be, the testimony, from those who
knew him best, who watched his daily life and
marked his conduct, is almost wholly to the effect
that he was sound of mind up to the very day on
which he died.

II. Appellant further claims that, if it be con-
ceded that the conveyance cannot be avoided because
of unsoundness of mind, it should nevertheless be set
aside because of fraud and undue influence on the
part of the grantees. As preliminary to this contention,
they insist that undue influence will be inferred from
the nature of the transaction alone, where, as in this
case, the instrument was executed between persons
standing in such confidential relations as parent and
child, and, that the burden is upon the grantees to
show that the conveyance was freely and deliberately
made. It is doubtless true that, under the facts dis-
closed, the rule contended for should obtain; and we
look then to see whether the defendants have met the
burden imposed upon them. When Brady concluded
to make the deed, he went to the office of an attorney
at Iowa City, stated what he wished to do, and asked
the attorney to prepare the deed. When inquired of
as to his object, he stated that he wished to give the
defendants his property, and did not desire to make a
will, but wanted them to have a home after he was
gone. To a suggestion from the attorney that a con-
dition for future support might properly be included,
he said that he thought he knew what he was doing,
and that he did not want that in the deed. He said
he could trust his children without any such provis-
ion. After the instrument was prepared, a notary
was called, and the grantor's acknowledment taken.
After the deed was signed and acknowledged, Brady
delivered the deed to his daughter Rose, and requested
VOL. 100 Ia—40

her to take it to the court house for record. This she did, and from that date on, Brady declared to various persons that the property belonged to the appellees. To an assessor who came to assess the property in the year 1894, he explained the whole transaction, and gave as his reasons for making the deed, that John and Rose had been very good to him, and he wanted them to have the property for taking care of him. The defendants themselves could not, because of their relationship to the deceased, give in evidence any personal transactions or communications had with him, and no direct evidence was adduced by the plaintiff tending to show any undue influence used by the defendants in securing the deed. She claims, however, that the division was so unfair, and the relations of the parties so close, that fraud should be inferred. To meet this it is shown that the deceased objected to plaintiff's marriage to Chambers; that he did not like him; that he believed him to be a spendthrift and a drunkard. Again, it is shown that the deceased lived with the appellees after the marriage of appellant, and that they took care of him in sickness and in health, and that he recognized their services as valuable to him. This in large measure accounts for the conveyance, and, as far as possible, under the circumstances, rebuts the suggestion of undue influence. Moreover, it is quite well established that the deceased was a man of firm conviction. He met every suggestion which did not accord with his views with decided opposition, and so far as possible, "had his own way." There is an absolute want of evidence tending to show any design on the part of the defendants to become possessed of their father's property to the exclusion of the plaintiff, and nothing to show that they did anything not prompted by filial affection and regard. If we were to set aside the deed for fraud and undue influence, upon the showing made

in this case, it would be virtually a declaration that no conveyance from father to child, where other children are not remembered, could be sustained after the death of the grantor. This we are not inclined to do. The law places no limitations upon the power of the father to make such disposition of his real estate during his life-time as he may elect, even though other children are thereby deprived of property which otherwise would have descended in part to them upon his death. The facts in this case tending to show undue influence are not stronger, if as strong, as in *Brockway v. Harrington*, 82 Iowa, 23 (47 N. W. Rep. 1013), and *Lewis v. Arbuckle*, 85 Iowa, 335 (52 N. W. Rep. 237), wherein we sustained conveyances against claims of unsoundness of mind and undue influence; and, following these, we think the judgment should be AFFIRMED.