# STEPHEN LORTS, Guardian of WILLIAM LORTS et al., Appellant, v. ELDORADO WASH et al.

### Division Two, June 9, 1903.

1. **Deposition:** REFUSAL TO OBEY SUBPOENA. A motion to strike out defendants' answer in a will contest on the ground that they had refused to obey a subpoena to appear before a notary public and give their depositions in the cause, is no part of the record proper, and in order that the action of the court in overruling that motion may be reviewed on appeal its attention should have been called to the matter in the motion for a new trial.

2. **Wills:** INCAPACITY: EVIDENCE: EXPERT TESTIMONY. It is not error to refuse to permit a physician to state whether or not a testatrix seventy-three years old, who had, for several days prior to executing the will, suffered with pneumonia, and was much of the time delirious, with very high temperature, was of sufficiently sound memory to comprehend the disposition she was making of her property, if that physician had never seen her in her lifetime and, had not further qualified himself as an expert than to say he had treated a great many old people, there being no preliminary examination to show that he had any opinion as to her mental condition.

3. ———: UNDUE INFLUENCE: ACTIVE PROCUREMENT OF BENEFICIARY. Unless the evidence shows that the influence exercised by the beneficiaries of a will amounts to something more than the influence of affection or attachment, the court should not instruct the jury that the will can not stand if the beneficiaries were "active in procuring said will to be written" or "mentioned to testatrix the names of her disinherited grandchildren."

4. ———: SUBSCRIBING WITNESSES. A failure to introduce all the subscribing witnesses to the will does not constitute reversible error; all that is required of those claiming under the will is to make out a prima facie case in the first instance. When the will is contested, it devolves upon the proponents to prove its execution, that the testator was of requisite age and that he was sane. That makes out a prima facie case. It then devolves on contestants to establish incompetency or undue influence.

5. ———: POWERS OF COURTS. Courts can not make wills, and the unmaking of them ought to be based on satisfactory evidence.

6. ———: COURT SITTING AS A JURY. Where in a will contest the court sits as a jury, its province is to determine the credibility of the witnesses and the weight to be attached to their testimony.

Appeal from Phelps Circuit Court.—*Hon. L. B. Wood-side,* Judge.

AFFIRMED.

*Thomas M. & Cyrus H. Jones* for appellant.

(1)   The judgment and finding of the court in sustaining the will in this case is against the law and not supported by the testimony.   (a)   Because the proponents failed to place upon the witness stand all the witnesses to the will of Caroline Wash.   The heir has the right to have the condition and mental capacity of the testator to make a will proved by all the witnesses that the statute has placed about the testator.   Odenwaelder v. Schorr, 8 Mo. App. 465; Miltonberger v. Miltonberger, 8 Mo. App. 309; Harris v. Hays, 53 Mo. 90; Norton v. Paxton, 110 Mo. 461; Craig v. Craig, 156 Mo. 363; Underhill on Evidence, p. 274.   (b)   The preponderance of the evidence in this case is against the validity of the will, and there is no substantial evidence to support the finding and judgment of the court.   The plaintiffs introduced the attending physician, Dr. William Ferrell, who had visited the deceased within twenty-four hours after she was taken sick.   He examined her not more than two hours before this will was written. He described her condition at that time.   The deceased had been delirious before that and was suffering pain at the time, with pulse 120, temperature 101, and in a sinking condition.   The doctor stated that she had not sufficient strength of mind at about four o'clock in the evening when the will was written to transact any business, and on cross-examination he testified that by reason of her condition of mind she was unable to tell a person writing her will to whom she wanted her property to go.   Taylor's Med. Jur., p. 712.   The testimony introduced by the plaintiff showed clearly that the deceased did not have sufficient strength of mind to make

the will in question and that the judgment is, therefore, without any substantial evidence to support it. Moore v. McNulty, 164 Mo. 119; Spohn v. Railroad, 87 Mo. 74; Dean v. Fire Insurance Association, 65 Mo. App. 209; Boggess v. Railroad, 118 Mo. 328; Suddoth v. Bryan, 39 Mo. App. 652. (c) There is no evidence that the testatrix requested S. T. Mitchell or any other witness to witness this will. (d) Again, since it appears from the evidence in this case that Eldorado Wash and Pierre Watson were active in procuring the execution of this will; Watson, a stranger, being constantly present with the testatrix from the time of her sickness, active about the place, always present in the sick room when neighbors called to see her, present when the will was written, in the room where it was written, his two brothers present; Eldorado Wash requesting witnesses to sign the will, active in its dictation, and these two people receiving through it all of the testatrix's property, whereby they were enriched, and especially this stranger, Watson, while the grandchildren of the deceased, the children of the deceased daughters, were beggared by the provisions of this pretended instrument and disposition of property, clearly unequal in its distribution, and clearly coupled with evidence which would impress any reasonable person that undue influence and fraud was perpetrated in procuring this instrument, pretendedly the will of this old, weak and dying woman—we submit that under this state of facts the burden of proof was shifted from plaintiffs and rested upon the defendants, the proponents. McFadin v. Catron, 120 Mo. 270; Lins v. Lenhardt, 127 Mo. 282; Benoist v. Murrin, 32 Mo. 322. (2) The court refused to permit plaintiffs to introduce medical expert evidence as to the condition of the mind of Caroline Wash. The will in question was a will executed *in extremis,* and such wills are always to be regarded with suspicion and may be set aside according to the medical circumstances proved. It was, therefore, competent for plaintiffs to show the condition

of the mind and memory of the alleged testatrix on the Thursday evening that this will was written, and to show whether or not she had sufficient strength of mind or memory on that evening to realize and comprehend the extent of the business of making a disposition of her property. Taylor's Medical Jurisprudence (11 Ed.), p. 715; 1 Jarman on Wills, p. 51; McClintock v. Curd, 32 Mo. 411; Appleby v. Brock, 76 Mo. 316; Meeker v. Meeker, 74 Ia. 357; Beaver v. Spangler, 93 Ia. 576; Howes v. Colburn, 165 Mass. 385; Kempsey v. McGinnis, 21 Mich. 138; Curr v. Lunsford, 31 W. Va. 659; Lester v. Pittsford, 7 Vt. 158; Morris v. Crawford, 17 Vt. 499; Kram v. Kram, 33 Vt. 15. (3) The court erred in refusing plaintiff's declaration of law No. 3. Myers v. Hauger, 98 Mo. 438; Baker v. Baker, 102 Wis. 236; 1 Woerner's American Law of Administration (2 Ed.), sec. 32; Carl v. Gabel, 120 Mo. 297. (4) Plaintiffs' declaration of law No. 4 should have been given. This declaration properly defined testamentary capacity. Benoist v. Murrin, 58 Mo. 322; Thompson v. Ish, 99 Mo. 180; Norton v. Paxton, 110 Mo. 465; Myers v. Hauger, 89 Mo. 433; Moore v. McNulty, 164 Mo. 118; Hall v. Perry, 87 Me. 669; 47 Am. S. 352; Carl v. Gabel, 120 Mo. 291; 1 Woerner's American Law of Administration (2 Ed.), sec. 23. (5) The defendants in this case were subpoenaed by R. C. Carpenter to appear before him and give their deposition prior to the trial of this case, concerning the facts and circumstances surrounding the alleged execution of this will. The defendant, Eldorado Wash, positively ignored and refused to obey the subpoena. The defendant, Pierre Watson, contemptuously left the notary's office and refused to give his deposition. An attachment was issued for him. He went to his room in St. James and there claimed to have a chill, although he was seen on the streets from early morning up to the time he was brought to the notary's office; and he was heard to say in the presence of William Brown, a reputable witness,

in reference to testifying or giving his deposition in said cause, that he was not going to testify in the cause. That he made this declaration at ten o'clock before the notary, and that he cursed and swore that he would not testify. The defendant, Eldorado Wash, refused to appear and testify, and an attachment was issued for her. She contemptuously avoided appearing in obedience to the subpoena and give her deposition. Afterwards, at the September term of the circuit court, 1900, these defendants, Eldorado Wash and Pierre Watson, appeared and filed their answers in said cause. Thereupon the plaintiffs filed a motion to strike out their answers, which motion the court overruled. Appellants contend that the trial court should have stricken out the answers of these defendants filed in this case, because they were in contempt. Sec. 4658, R. S. 1899; Hasbell v. Sullivan, 31 Mo. 435; Larimore v. Bobb, 114 Mo. 446; Royer & Harwood v. German, 48 Mo. App. 510; Snyder v. Rabb, 40 Mo. 167.

*J. A. Watson, F. H. Farris* and *J. B. Harrison* for respondents.

(1) The execution of a will may be proven by other witnesses. Morton v. Heidorn, 135 Mo. 608. Evidence of the subscribing witnesses is not conclusive either to sustain or overthrow the will. Mays v. Mays, 114 Mo. 536. "The *onus* is on the proponents of a will in a statutory proceeding to determine its validity, to prove its proper execution and attestation, and also that the testator was of the proper age and of sound mind." Carr v. Gabel, 120 Mo. 283; Mattox v. Mattox, 114 Mo. 35. (2) A ruling upon the competency of a witness to which no exceptions were saved will not be reviewed. State v. McAfee, 148 Mo. 370; Ross v. Railroad, 141 Mo. 390; Gruntley v. Stead, 77 Mo. App. 155; Stewart v. Outhwait, 141 Mo. 562; Brown v. Mays, 80 Mo. App. 81; State ex rel. v. Bank, 144 Mo. 381; State v. Grant,

152 Mo. 57.    (3)    This court will to a great extent defer to the finding of the jury and rendering of the trial court.    Cole v. Madden, 91 Mo. 613; James v. Bogert, 106 Mo. 267.

FOX, J.—This is a suit brought by appellant on the 12th day of May, 1900, to contest and set aside the will of Caroline Wash, who died on the 23rd day of February, 1900, the will having been executed on the 22nd day of February, 1900.

### STATEMENT.

The petition in the case, after averring the interests of the heirs and the execution of the will, makes the following allegations, viz.:

"The plaintiffs further state that said Caroline Wash was over seventy years of age when she died; that at and for sometime prior to the date of her death she was weakened, both in body and mind, by old age; that she, sometime prior to her decease, was under the direct influence and control of Eldorado Wash and Pierre Watson.    That several days prior to her decease she was attacked by a deadly malady, and then and there became sick unto death, and so remained to the 23rd day of February, A. D., 1900, when she died; that on the 22nd day of February, A. D., 1900, she being then and there enfeebled by her old age and the ravages of the deadly disease aforesaid, and racked by excruciating pains, and while in the throes of death, the said defendants, Eldorado Wash and Pierre Watson, procured the preparation of a paper writing, and procured and induced the said Caroline Wash to sign the same."

By the terms of the will Eldorado Wash and Pierre Watson were made the beneficiaries of said will.    Said will was duly witnessed and probated, which was duly averred in the petition.    The petition further avers that said instrument aforesaid "was not and is not the

will of Caroline Wash.    For that the said Caroline Wash, for a long time prior to her death, was debilitated both in body and mind, as aforesaid, and plaintiffs state and aver the fact that while she was under their influence and control, said defendants, for the purpose of influencing and poisoning the mind of said Caroline Wash against plaintiffs, made false, fraudulent, and fabricated reports and charges of and concerning plaintiffs to her, for the fraudulent purpose of inducing her to disinherit plaintiffs, and obtain for themselves a bequest of all her property; that for a long time prior to her death the said defendants unduly and artfully influenced her, the said Caroline Wash, so that she was completely under their influence and control up to the date of her death as aforesaid.    That on the day of her death as aforesaid, the said defendants by their undue influence, artful designs, and fraudulent practices, induced and procured the said Caroline Wash, to sign the aforesaid instrument of writing, purporting and pretending to be her last will and testament.    That at the time she, the said Caroline Wash, signed said paper of writing as aforesaid, she was in a dying condition, all as hereinbefore said, and her mind was so enfeebled and unsound as to render her totally incapable of understanding the matter in hand, and that she did not comprehend the purport of the instrument signed by her.''

The answer of defendants is in words and figures as follows:

''Now come the defendants, and for answer to plaintiffs' petition, admit:

''First.    That the parties plaintiff are the persons they represent themselves to be, and that their heirship in the estate of Caroline Wash, deceased, is as charged in the petition.

''Second.    That the will of said Caroline Wash has been probated, as charged, and that the same now stands as the true will of Caroline Wash.

"And defendants, further answering, aver that the will in contest is the true will of said Caroline Wash, and deny each and every allegation in plaintiffs' petition contained not herein specifically admitted. Wherefore, defendants having fully answered, ask to be discharged with their costs."

The will of Caroline Wash sought to be annulled by this proceeding, was as follows:

"State of Missouri, county of Phelps, In the name of God, Amen:

"I, Caroline Wash, being of sound mind and disposing mind, and knowing the uncertainties of life and the certainties of death, do hereby make, publish and declare this to be my last will and testament, hereby revoking all former wills and testaments made by me.

"First. I give and bequeath to my beloved daughter, Eldorado Wash, and to Pierre Watson all my personal property whatsoever kind I may possess at the time of my decease; except such part thereof as I give to the other persons hereinafter mentioned in this will; they, the said Eldorado Wash and Pierre Watson to share alike in said property.

"Second. I give and bequeath to William Lorts, Sallie Fuhring, Hannah Lorts, Genette Lorts, Lulu Lorts, Frederick Lorts, Herman Lorts, and Alexander Lorts, who are heirs at law of my daughter, Mary Lorts, deceased, the sum of one dollar each, to be paid within one year after my decease.

"Third. I give and bequeath to John Morris, Samuel Morris, Stephen Morris, James Alexander Morris, who are heirs at law of my daughter, Anna Mariah Morris, deceased, the sum of one dollar each, to be paid within one year after my decease.

"Fourth. I give and bequeath to my son, James Alexander Wash, or to his heirs at law, the sum of one dollar to be paid within one year after my decease, provided the same is called for by him or those who legally represent him, and if the same be not called for as afore-

said, within one year after my decease, then the same is to revert to Eldorado Wash.

"Fifth. I give and devise to my daughter, Eldorado Wash, and Pierre Watson all my right, title and interest in and to the following described real estate lying, being and situated in Phelps county, Missouri, to-wit: The southwest quarter of section number five, in township number thirty-nine, in range number six, west; the south half of the southeast quarter of section five, township number thirty-nine, range number six, west; the northwest of the southeast quarter, west half of lot number one of the northeast quarter, west half of lot number three of the northeast quarter, lot number three of the northwest quarter, and the east fractional west half of lot number four of the northwest quarter, all in section number five, in township thirty-nine, range number six, west; and the north half of section number eight, in township thirty-nine, range number six, west; it being my intention to give and to devise to them all my interest in the above described lands, as is shown by my declaration, as the widow of T. A. Wash, deceased; they, the aforesaid Eldorado Wash and Pierre Watson, to share alike in the above described premises.

"Sixth. I hereby appoint my executors, Eldorado Wash and Pierre Watson, to act in settling up my estate without bond, and I hereby charge them to, as soon as practical after my decease, to pay all indebtedness that may exist against me at the time of my decease.

"Witness my hand and seal this 22nd day of February, nineteen hundred.

"(Seal)          CAROLINE WASH.

"In testimony whereof, we the undersigned witnesses hereby certify that the above named Caroline Wash signed the within document in our presence this 22nd day of February, A. D., 1900.

"Witnesses: J. A. Watson, C. C. Watson, S. T. Mitchell, J. J. Carter."

A jury being waived, this cause was submitted to the court, upon the testimony introduced.

It is unnecessary to burden this opinion with a detailed statement of all the testimony offered in the cause; it is sufficient to dispose of the legal question involved, to simply say that there was testimony by both plaintiffs and defendants, tending to prove the issues presented by the pleadings.

The following declarations of law, as disclosed by the record, were given at the request of the plaintiffs:

"1.  The court declares the law to be that if it appears from the evidence that at the time the will in question was made, Caroline Wash was on her death-bed, racked with pain and disease, and feeble in mind and body from such sickness, and had not sufficient understanding and intelligence to transact her ordinary business affairs, and to comprehend the transaction then in question, the nature and extent of her property and to whom she was giving the same, then she had not sufficient capacity to make a will, and the issues will be found for the plaintiffs.

"2.  The court declares the law to be that the burden of proof is upon the defendants in this case to prove the proper execution and attestation of the will in question, and that the testatrix was of sound mind at the time of the execution of said will; and unless the defendants or proponents of said will have shown such facts by a preponderance of the testimony, the issues will be found for the plaintiffs."

Instructions numbered three and four, requested by plaintiffs, were refused, which we will notice in the course of the opinion.

The court found the issues for the defendants, and rendered judgment accordingly, sustaining the will. From this judgment plaintiffs have prosecuted their appeal, and this cause is now before us for review.

OPINION.

The attack upon this will is based upon two grounds:

First. It is alleged that the beneficiaries in said will, by the exercise of an undue influence over the mind of the testatrix, procured the declaration and publication of the will involved in this suit.

Second. That Caroline Wash was, by reason of her physical and mental condition, incapable of making a will.

The first contention urged by the plaintiffs is that the court erred in overruling the motion filed, to strike out the answer of defendants. This motion was filed and the reasons assigned in it for striking out the answer of defendants was that they refused to obey the command of a subpoena to appear before a notary public and give their depositions in this cause.

It will be observed that the error complained of in this motion was not called to the attention of the court in the motion for new trial. This motion to strike out was no part of the record proper and in order to subject the action of the court in overruling it to review, its attention had to be directed to it in the motion for new trial.

The action of the trial court upon this motion has not been properly preserved by this record, and is therefore not before us for review.

Our attention is next directed to the error complained of in the exclusion of testimony. During the progress of the trial, Dr. Johnson of Rolla, Missouri, was introduced as a witness. He had never visited Mrs. Wash during her illness. He testified as follows:

"Q. Now I will ask you if in your experience you have treated old people, that is, over the age of sixty or seventy? A. A great many.

"Q. Are you acquainted with or from your experience do you know, the effect of this disease upon old people? A. Yes, sir.

"Q. Now, I will ask you, doctor, if a woman seventy-three years old, sick with lagrippe and pneumonia from Sunday till Saturday morning; delirious on Tuesday and Wednesday, with a temperature on Sunday of 103, on Tuesday of 105; delirious on Wednesday and Thursday, her temperature 101, pulse 120 and in a sinking condition and in considerable pain; Friday morning delirious, pulse less than 100, temperature 105, and dead the following Saturday morning, would be of sound and sufficient memory on Thursday evening to realize and comprehend the extent of the business of making a disposition of her property?

"The defendants objected to this question for the reason that the witness had not qualified himself sufficiently to be authorized to answer that question, and for the further reason that it is not based upon the facts as heretofore developed in the trial, and for the further reason that it is not within the pale of human testimony to determine the condition of man's mind, which objection was by the court sustained; to which action of the court in sustaining the said objection of the defendants, the plaintiffs, by counsel, in open court, objected and excepted at the time."

The court was clearly correct in excluding the answer to this question. In the first place, the answers to the preliminary questions do not show that the doctor had any opinion as to her mental condition. He may have, from his experience in treating pneumonia, formed a very correct opinion generally, as to the effects of that disease upon the system; but he does not pretend to say that he could give an opinion as to her mental condition at the time she executed this will. This question was clearly incompetent.

Complaint is also made that the court excluded competent evidence offered by plaintiff, tending to im-

peach witness J. A. Watson, the attorney who wrote the last will of Mrs. Wash. This testimony, offered for the purpose of impeachment, consisted of a circular, issued by Watson while he was a candidate for some office. It is as follows:

"TO THE VOTERS OF PHELPS COUNTY.

"Rolla, Missouri, April 15, 1900.

"As some of my opponents are circulating a report to the effect that I, as attorney, drew up a will for the late Carry Wash, deceased, in which I fraudulently had her give my brother a portion of her estate, and as they are also circulating various fraudulent reports about the same, I desire to take this method to say to the voters of this county that said reports are absolutely false and without any foundation whatever, and are being circulated by my opponents for the express purpose of misleading the people of this county, and thereby to injure my chances for nomination to the office of prosecuting attorney. The facts in the case are shown by the following affidavit, which is signed by Eldorado Wash, a daughter of the deceased, and by S. T. Mitchell and J. J. Carter, who were present when said will was drafted by me, and who were also witnesses to the same.

"'State of Missouri, county of Phelps, ss.

"'On the 15th of April, 1900, before me, W. D. Jones, a notary public, within and for the county of Phelps and State of Missouri, came Eldorado Wash, S. T. Mitchell and J. J. Carter, and state the facts to be that they were present at the residence of the late Carry Wash, deceased, on the 22nd day of February, 1900, when she made her last will and testament; that she told J. A. Watson, as her attorney, in our presence how she desired to dispose of her property, and that he wrote her will exactly as directed, and that she signed the same in our presence, and that the said J. A. Watson did nothing whatever but write said will as her attorney as she

directed, and reports of whatever nature to the contrary are to our knowledge and belief absolutely false.

"'ELDORADO WASH,
"'S. T. MITCHELL,
"'J. J. CARTER.

"'Subscribed and sworn to before me, this 13th day of April, 1900.

"'(Seal)        W. D. JONES, Notary Public.
"'My commission expires April 16, 1900.'

"Permit me to say in conclusion, that I never in my life spoke a word to Mrs. Wash or she to me about what disposition she was to make of her property except what was said between us in the presence of the above named parties, as above stated. I also desire to further state that I have tried to make this race fairly and squarely on my merits as a lawyer and a man, and I have not expected, nor do I expect, to get into office by slandering and abusing my opponents, as they are trying to do me, and no matter to me what the result of this primary election is, I shall stand, as I have ever stood, true to the grand old Democratic party, true to its flag, true to its principles, and true to its nominees.

"Respectfully,
"J. A. WATSON."

We have carefully read the testimony of Watson, both direct and on cross-examination, and we find no error in the exclusion of this circular. It was purely a circular, applicable to a political campaign, and did not, in fact, impeach the witness upon the material parts of his testimony.

This leads us to the contention of the plaintiffs, that the court erred in refusing instructions numbered 3 and 4, as requested by the plaintiffs. That we may fully appreciate the application of the instructions, as to the facts as developed by the testimony, we here quote them as follows:

"3.    The court declares the law to be that in determining whether undue influence was used to procure the execution of the paper writing offered as the last will of Caroline Wash, it will take into consideration her mental and physical condition at the time of executing it, the will itself and the provisions therein, and if from all the facts and circumstances in evidence, it appears that Pierre Watson and Eldorado Wash, the beneficiaries of said will, were constantly with Caroline Wash for sometime before and during her last sickness, and were active in procuring said will to be written, and that they or either of them, mentioned the names of the disinherited grandchildren of the said Caroline Wash; and that they were present and either of them assisted in dictating or mentioned the names of the disinherited grandchildren to the said Caroline Wash, or to the said scrivener, then and in that case, said will was not the will of said Caroline Wash, and the issues will be found for the plaintiffs.'

"4.    The court declares the law to be that in order to constitute a sound and disposing mind, the testator must not only be able to understand that he or she has by his or her will given the whole of his or her property, to one object of his or her regard, but must also have capacity to comprehend the extent of his or her property, and the nature of the claims of others who by his or her will he or she has excluded from all participation in that property, and that he or she must at the time be capable of recollecting who those relations are, and of understanding at the time their respective claims upon his or her regard and bounty, and must be of sufficient mind and judgment to deliberately form an intelligent purpose of excluding them from any share in his or her property; and in this case unless it appears from the evidence that the testatrix was of sufficient strength of mind and memory to comprehend the extent and description of her property interest, as well as to remember and give to the scrivener writing her will the names

of each of her grandchildren entitled to participate in her property, the issues will be found for the plaintiffs.''

We will simply say as to instruction number 3, that the testimony in this case did not warrant any such instruction. After a careful examination of all the testimony, there is an entire absence of any substantial testimony tending to show any undue influence exercised over the mind of Mrs. Wash in procuring the will involved in this suit. In the case of Jackson v. Hardin, 83 Mo. 175, Philips, C., in a very able and forcible opinion, announced very clearly the true rule as applicable to this subject. He says:

''The influence denounced by law must be such as amounts to overpersuasion, coercion or force, destroying the free agency and will power of the testator. It must not be merely the influence of affection or attachment, nor the desire of gratifying the wishes of one beloved, respected and trusted by the testator. [Rankin v. Rankin, 61 Mo. 295; Higgins v. Carlton, 28 Md. 115; 1 Redf. on Wills, pp. 522, 523.] While the extreme age, helplessness and consequent susceptibility of the testator are important facts in the ascertainment of the undue influence, yet it is not to be inferred from either age, sickness or debility of body if sufficient intelligence remains. [Higgins v. Carlton, supra.]''

He also very appropriately adds in discussing this question:

''As neither courts nor juries can make wills for men they ought to be careful in unmaking them.''

There was no error in refusing instruction number 3.

As to instruction numbered 4, it will suffice to say that it is not in all respects in harmony with the approved precedents; it requires a test of capacity which would render most people incapable of disposing of their property. While the instruction in the main is correct, yet it undertakes to add tests to the approved

precedents which render it objectionable. Aside from this, instruction number 1 given at the request of plaintiffs, embodied sufficiently the features as urged by this refused instruction. This was a trial by the court, and instruction number 1 indicates very clearly the theory upon which the case was tried, and pointedly shows that the court applied the tests of capacity sanctioned by the well-settled law on that subject.

It is further insisted by plaintiffs that defendants should have introduced all the subscribing witnesses. This contention is most appropriately answered by this court, in the case of Craig v. Craig, 156 Mo. 1. c. 361, where it is announced that: "Our statute requires that a will be in writing, signed by the testator, or by some one by his direction in his presence, and be attested by two or more witnesses subscribing it in the presence of the testator. [Sec. 8870, R. S. 1889; Idem, sec. 4604, R. S. 1899.] But the law does not make the proof of the will dependent alone on the testimony of the subscribing witnesses or render their testimony absolutely essential."

To the same effect is Mays v. Mays, 114 Mo. 541: "The law does not place the validity of these important muniments of title at the mercy of those who may be called upon to verify their execution."

While the general rule is as announced in Craig v. Craig, supra, that all the subscribing witnesses should be introduced, it does not follow that a failure to introduce them would constitute error. That rule is announced as a suggestion of the appropriate method of procedure in cases of this character. On the other hand, the rule is well settled that all that is required of those claiming under the will is to make out a "prima facie" case.

Judge BLACK, in Norton v. Paxton, 110 Mo. 1. c. 462, in speaking of the method of procedure, announced this very plain and simple rule: "It is sufficient for those who claim under the will to make out a prima facie

case in the first instance. There is a presumption that every adult person is *compos mentis,* but the presumption is one of fact only. It may be that the production of a will, reasonable on its face, with proof of due execution and attestation, and that the testator was of full age, will make out a prima facie case on the part of the proponents, thus giving full force to the presumption, though the usual course is to offer some evidence of mental capacity. The parties claiming under the will having made out a prima facie case, the contestants must bring forward their evidence. But it does not follow from all this that the burden of proof shifts. It remains with those claiming under the will."

It was not absolutely essential to introduce all the witnesses attesting the execution of this will.

It is earnestly insisted by plaintiffs that the finding of the trial court was not sustained by the proof. We are unable to concur with the views of the learned counsel as to this claim. Upon a careful consideration of all the testimony, we are of the opinion that the judgment in this cause was amply supported by the testimony. As was elsewhere said, "courts can not make wills," and the unmaking of them ought to be based upon reasonably satisfactory evidence.

Marshall, J., in the case of Sehr v. Lindemann, 153 Mo. l. c. 288, very clearly states the rule, and the application of it. The testimony in that case was in some respects similar to the evidence in this case. He says:

"Under the Statute of Wills the owner of property is permitted to dispose of it as he chooses after his death. If he makes no disposition of it by will the Statute of Descents disposes of it for him. When a will is contested it devolves upon the proponents to prove the execution of the will, that the testator was of requisite age and that he was sane. This makes out a prima facie case, and it then devolves upon the contestants to establish incompetency or undue influence. By com-

petency is meant intelligence sufficient to understand the act he is performing, the property he possesses, the disposition he is making of it and the persons or objects he makes the beneficiaries of his bounty. Imperfect memory caused by sickness or old age, forgetfulness of the names of persons he has known, idle questions or requiring a repetition of information will not be sufficient to establish incompetency, if he has sufficient intelligence remaining to fulfill the above definition. Mere opinions of witnesses that the testator was 'childish,' or acted 'funny,' or was 'worse than a child,' or that there were 'inequalities in the will,' unaccompanied by any testimony showing any particular act or fact evidencing incompetency, do not make out a case of incompetency when the testimony shows that the testator 'knew what he was doing and to whom he was giving his property.' By undue influence is meant such influence as amounts to force, coercion or overpersuasion which destroys the free agency and will power of the testator. It is not merely the influence of affection or desire to gratify the wishes of one who is near and dear to the testator. And 'affirmative proof of such undue influence is required to be made, either by direct facts shown, or by facts and circumstances from which undue influence results, as a reasonable and fair inference and not a mere conjecture.' "

The testimony in this case fails to show any undue influence as contemplated by law, in procuring the making of this will. The testimony upon the issue as presented, of incapacity to execute the instrument, on the part of the plaintiffs, is very slight and of a very unsatisfactory nature.

The doctor who testified and expressed an opinion does not pretend to be an expert upon nervous diseases or diseases of the brain, and even his testimony upon cross-examination and upon answers to questions propounded by the court, indicate that Mrs. Wash was ca-

pable 'of executing the will and disposing of her property.

The testimony on the part of the defendants not only make out a prima facie case, but by a clear preponderance of testimony, established the capacity of Caroline Wash to execute the will before us.

The court had the witnesses before it, in this case, and doubtless observed their conduct and demeanor. Sitting as a jury, its province was to determine their credibility, and the weight to be attached to their testimony. Its findings will not be disturbed. The judgment will be affirmed. All concur.