## MARY S. BERST, Appellant, v. W. J. MOXOM et al., Respondents.

### Springfield Court of Appeals, June 12, 1911.

1. **WILLS: Proof of Execution: Living Witness.** In the proof of a will the court should require the testimony of the subscribing witnesses, where it is obtainable, and where one of these witnesses is dead and the other living, but no effort was made to procure the evidence of the living witness until two days before the trial, and it did not appear that the address of this witness was unknown or could not have been ascertained, the trial court erred in permitting the defendants to establish the will by proof of the handwriting of this witness.

2. ———: ———: **Burden of Proof: Action to Set Aside: Undue Influence.** In a suit to set aside a will on the grounds of undue influence the burden is upon the defendant to prove the execution of the will.

3. ———: ———: **When All Witnesses Are Dead: Action to Set Aside.** Under the Statutes of this state when all the witnesses to a will are dead or their residence unknown, proof of the handwriting of the testator and of the subscribing witnesses, together with such facts and circumstances as would be sufficient to prove such will in a trial at law, are sufficient to establish a will and this provision applies to a contest of the will in the circuit court.

4. ———: ———: **When One Witness is Dead: Action to Set Aside.** The statutes provide that when one of the witnesses to a will is dead and the other has been examined; then such proof shall be taken of the handwriting of the testator and of the dead witness and of such other circumstances as would be sufficient to prove such will on a trial at common law and this provision applies to a contest of a will in the circuit court.

5. ———: ———: **Witness Living in Another State.** The statutes do not authorize the proof of the handwriting of a witness to a will to take the place of the testimony of such witness, except when the witness is dead or his residence is unknown. The fact that the witness to a will is beyond the state is not an excuse for offering secondary testimony, for if the witness lives in any other state and his residence is known, he must be procured or his deposition taken.

6. **WITNESSES: Action to Set Aside Will: Former Wife of Deceased: Evidence Sufficient to Show Divorce.** In a suit to set aside the will on the ground of undue influence, the former wife of the deceased was offered as a witness, and it appeared

Berst v. Moxom.

from the evidence that the witness and the deceased separated nearly forty years before the trial; that both remarried and in her testimony she spoke of a divorce proceeding in which he obtained a divorce. *Held*, the evidence was sufficient to show that the deceased had obtained a divorce from the witness and therefore she was competent to testify.

7. ———: ———: **Wife of Deceased Incompetent.** In an action to set aside a will on the grounds of undue influence the wife of the deceased is not a competent witness to prove what the deceased said, and the condition of his mind, at the time the will was executed.

8. **APPEAL AND ERROR: Question of Fact: Wills.** In an action to set aside a will on the ground of undue influence, where the trial court passed on the question of fact covering the capacity of the testator to make a will and also the issue of undue influence, and the testimony was sufficient to make these issues questions of fact, the appellate court will not weigh the testimony, nor pass upon its credibility.

9. **WILLS: Deposing Mind: Requirements.** The requirements of a sound and disposing mind, capable of making a will does not imply that the power of the mind may not have been weakened and impaired by old age and bodily desease. It only requires that the testator's mind be sufficiently sound to enable him to know and understand the business in which he is engaged.

10. ———: ———: ———: A person has sufficient understanding to make a will when he knows that the paper he is executing is a disposition of his property to take effect after his death, and remembers generally the nature and amount of his property and the persons he desires to share his estate.

11. **WILLS: Action to Set Aside: Undue Influence: Burden of Proof.** In an action to set aside a will on the ground of undue influence, the burden is upon the plaintiff to establish the issue of undue influence.

12. ———: **Undue Influence: Sufficient to Set Aside Will: Coercion.** The influence denounced by the law which will vitiate a will must have been such as to amount to coercion and the destroying of free agency.

13. ———: ———: ———: **Persuasion.** Neither advice nor persuasion will vitiate a will made freely from conviction though such will might not have been made but for such persuasion.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,*
Judge.

REVERSED AND REMANDED.

*Wright Bros.* for appellant.

(1) Burden of proving the instrument rests upon defendants. They are required to show the testator was of lawful age and of sound mind, as well as the due execution of the will. Harris v. Hays, 53 Mo. 96; Holton v. Cochran, 208 Mo. 410; Mowry v. Norman, 204 Mo. 189; Cowan v. Shaver, 197 Mo. 212. (2) Ordinarily burden of showing undue influence rests upon plaintiff, but if a fiduciary relation is established or some confidential relation between defendants and testator, then the burden shifts. The presence of relation of confidence and trust alone will raise a presumption of undue influence. Bradford v. Blossom, 207 Mo. 230; Maddox v. Maddox, 114 Mo. 46; Dingman v. Romine, 141 Mo. 475. (3) In a contest the probate of the will must be made in solemn form. Cash v. Lust, 142 Mo. 637; Teckenbrook v. McLaughlin, 209 Mo. 538; Benoist v. Murvin, 48 Mo. 54. (4) Due execution of the pretended will was not proven. R. S. 1909, sec. 537. (5) Instrument was not read to G. H. Moxom. Beyer v. Herman, 173 Mo. 299; 1 Jarman on Wills, 47. (6) Opening statement of will cast suspicion on it. Mowry v. Norman, 204 Mo. 192. (7) Undue influence cannot ordinarily be proved by direct evidence, but may be shown and inferred by facts and circumstances as well as by the will itself and its provisions. Dansman v. Rankin, 189 Mo. 703; Gay v. Gillilan, 92 Mo. 264; Roberts v. Bartlett, 190 Mo. 701. (8) Undue influence of one defendant renders void. Teckenbrook v. McLaughlin, 209 Mo. 533.

*H. H. Ball* and *Moon & Moon* for respondents.

(1) The legal execution of the will was properly proved in one of the ways for proving the same, provided by the statute, that is, by proving the signature of the testator and the attesting witnesses to the will. One of the attesting witnesses being dead and the other out of the state and could not be found at the time of the trial.

Craig v. Craig, 156 Mo. 358; Lorts v. Wash., 175 Mo. 487; Mays v. Mays, 114 Mo. 541. (2) Evidence that the attesting witnesses were sent for, for the purpose of attesting the will, together with the evidence, that the room in which the will was written was a small room and that the two attesting witnesses entered said room and remained there with the testator until the will was completed, is sufficient to show that the attesting witnesses signed the will as such in the presence of the testator. Lindsay v. Stephens, 129 S. W. 645; Hughes v. Rader, 183 Mo. 700. (3) The record of probate of the commission to take proof of the will, the return to the commission and the proof of the will, show conclusively the proper and legal execution of the will. And such record is competent evidence of the legal execution of the will where the attesting witnesses are dead or cannot be found. R. S. 1909, sec. 558. (4) The burden of showing a conspiracy among the respondents to defraud the contestant by unduly influencing the testator in the making of his will rests on the contestant. Gibony v. Foster, 130 S. W. 342. (5) There is no sufficient evidence of fiduciary relationship existing between the testator and the respondents or any one of them, to warrant the shifting of the burden of proof as to the question of fraud. Gibony v. Foster, 130 S. W. 314; Winn v. Grier, 117 S. W. 59; Teckenbrook v. McLaughlin, 209 Mo. 533. (6) The question of whether or not the respondent Eva Moxom exercised an improper undue influence over the testator in the making of his will not an issue in this case, because not pleaded. Nor is there any evidence in this case to support such an issue if it were pleaded. Winn v. Grier, 117 S. W. 59. (7) Not essential to the validity of a will that it be read to the testator before he signs it. R S. 1909, sec. 537. (8) Not essential to the validity of a will that the testator take actual physical possession of the same after its execution. R. S. 1909, sec. 537. (9) Undue influence of one defendant will not render a will void where such

influence is neither pleaded or proved. Teckenbrook v. McLaughlin, 209 Mo. 551; Gibony v. Foster, 130 S. W. 324.

GRAY, J.—This action was instituted in the circuit court of Wright county to contest the will of G. H. Moxom. G. H. Moxom was married twice, and both wives were living at the time of his death, which occurred in Greene county, on the 24h day of January, 1909. The appellant and the respondent, J. A. Moxom, are the children of the first marriage, and the respondents, W. J. Moxom and Eva Moxom, are children of the second marriage, and the respondent, Harriet Moxom was the second wife and the mother of the respondents, W. J. Moxom and Eva Moxom.

G. H. Moxom, deceased, was past seventy years of age at the time of his death, and for sometime prior thereto had been quite feeble. He lived in Wright county, and about the 8th day of December, 1908, left his home at Norwood in that county, and went to a hospital in Springfield where he remained until about the 5th day of January, 1909, at which time he was taken to the home of the respondent, Joseph H. Moxom, where he remained until he died. On the 9th day of January, 1909, the defendants claim he executed his last will and testament. A paper purporting to be such an instrument was offered in evidence, and the name of the deceased was signed thereto and also the names of J. A. Davis and C. H. Gustavson, as witnesses. The will was filed for probate in the Probate court of Wright county, on the 2nd day of February, 1909, and as the witnesses thereto lived at Springfield, in Greene county, a commission was issued with the will annexed, and the proof of the execution of the will was made under the provisions of sections 550 and 551 Revised Statutes, 1909, and the will was admitted to probate in Wright county.

The plaintiff, during the last sickness of her father, and for some time prior thereto, resided in the state of Oregon, and the respondent, J. H. Moxom, resided in Springfield, and the other respondents in Wright county.

The plaintiff's petition alleges that at the time of the alleged execution of the instrument, her father was in extreme old age, and enfeebled by disease and age, and was incapable of understanding the nature and extent of his property or the object of his bounty, or the disposition he was making of his property; that the paper was not executed according to law, and that her father did not sign his name to it, nor authorize anyone to do so for him, and did not know what had been written; and further alleging that her father had never declared that the same was his last will and testament, and at no time requested the witnesses to attest the said paper as his will; that at the time of the execution of the said pretended will, her father was under the complete dominion and control of the respondents, and that the respondents conspired together for the purpose of exercising an undue influence over him and to induce him to execute said paper, giving to each of them such property as they had previously agreed upon among themselves. It is further alleged that the deceased owned a large farm in Wright county and lived thereon with the respondents, W. J. Moxom, Eva Moxom and Harriet Moxom until a short time before his death and that for several years previous to his death, the said respondents, on account of the enfeebled condition of the deceased, had attended to and transacted his business.

The suit was tried before the court without a jury, on the 31st day of August, 1910, resulting in a finding in favor of the will, and the plaintiff appealed to this court.

The first assignment of error relates to the action of the court in holding that the evidence was sufficient to prove the execution of the will. The evidence tends to

show that on the evening the will was made, Eva requested her brother Joe to go after Squire Davis and Mr. Gustavson for the purpose of having the will executed and stating to him that she desired to have the will prepared and executed while her father was in the notion. Davis was a justice of the peace and called at Joe Moxom's home with Mr. Gustavson, and it was understood and known by all the persons in the house that they had come for the purpose of witnessing the will of Mr. Moxom. As a result of the visit, the paper offered in evidence was prepared and delivered to Eva Moxom.

It was admitted at the trial that Mr. Davis was dead. The defendants offered testimony tending to prove that the will was signed by the testator and the two subscribing witnesses. Gustavson was not dead and he was not offered as a witness. The evidence showed that no effort was made to procure the evidence of the witness until two days before the day of trial; that the witness resided in Springfield at the time the will was executted, and continued to reside there until about the 15th of August; that with the knowledge of one of the defendants, he left Springfield, and went to Illinois to work in the machine shops at Moline; that on the 29th day of August, a subpoena was issued to secure his attendance before a notary in Springfield, for the purpose of having his deposition taken in the cause. The subpoena was returned unserved. There was no effort to ascertain the exact address of the witness until August 29th, and at that time the defendants were unable to learn the exact address of the witness at Moline.

The petition expressly charged that the will was not executed by the testator or the subscribing witnesses. The execution of the will was, from the time the petition was filed, one of the material issues in the case. The burden was upon the defendants to prove its execution.

Under the statutes of this state, when all the witnesses to a will are dead, or their residences unknown, proof of the handwriting of the testator and of the sub-

scribing witness, together with such other facts and circumstances as would be sufficient to prove such will in a trial at law, are sufficient to establish a will.

Our statutes further provide that when one of the witnesses is dead, and the other has been examined, then such proof shall be taken of the handwriting of the testator and of the dead witness, and of such other circumstances as would be sufficient to prove such will on a trial at common law.

Our Supreme Court has held that these provisions apply to contests and wills in the circuit court. [Craig v. Craig, 156 Mo. 358, 56 S. W. 1097.]

In Withington et al. v. Withington et al., 7 Mo. 589, the court held that proof by one of the subscribing witnesses only that the testator was of sound mind, is insufficient. And in Craig v. Craig, supra, the court said: "No court in which a will is offered for probate would be satisfied without having the evidence of the subscribing witness, if attainable, unless the proponents show good reason for not producing them, but when produced their evidence is not conclusive, and it is not the only evidence upon which a will can be established."

In Chase v. Lincoln, 3 Mass. 236, the court refused to probate a will because of the failure to produce one of the subscribing witnesses. The evidence showed that the witness was absent from the state, but it was not shown that the testimony could not have been procured by the exercise of proper diligence.

In Ward v. Wilcox, 51 Atl. 1094, it is declared that the testimony of the subscribing witnesses must be secured if available.

It will be noticed that our statute permits the execution of the will to be proven, when the subscribing witnesses are dead, or their residences unknown, by proof of the handwriting of the testator and the subscribing witnesses, together with certain other facts and circumstances. It was admitted that Davis was dead, and if the residence of Gustavson was unknown, then the

evidence was sufficient to submit the execution of the will as an issue of fact.

We do not believe the court was justified in holding the evidence sufficient to prove that the residence of Gustavson was unknown. The statute does not authorize the proof of the handwriting of the witness, to take the place of testimony of the witness except when the witness is dead or his residence is unknown. Suppose the defendants had shown that the witness was working in the car shops of a railroad company in Springfield, Mo., but his exact address in Springfield was unknown, and that the only effort to learn his exact address was certain inquiries made two days before the case was set for trial, would a court be justified in holding that the residence of the witness was unknown, as that term is used in our statute on wills? We think not. The fact that the witness is beyond the state, is not an excuse for offering secondary evidence. If the witness lives in any other state, but his residence is known, he must be produced or his deposition taken. When the defendants showed that the witness was in all probability, working in the car shops at Moline, Ills., and nothing further, they did not prove that his residence was unknown.

The record shows that Mrs. Stokes, the former wife of the deceased, was offered as a witness, and much of her testimony was excluded by the court, for the reason that she was the former wife of the deceased, and that the evidence failed to show that she had been divorced. The evidence did show that she and the deceased separated nearly forty years before the trial; that both re-married, and in her testimony, she spoke of a divorce proceeding in which he obtained a divorce. Under the authority of Maier v. Brock, 222 Mo. 74, 120 S. W. 1167, the evidence was sufficient to show that the deceased had obtained a divorce from her, and therefore, she was a competent witness. The court did not strike out all of the deposition of the witness, and the record is not

clear as to what testimony was rejected and what was admitted. But in view of the fact that the case must be re-tried, we have passed upon the question as to her competency as a witness.

The plaintiff offered the deposition of the wife of the respondent, J. A. Moxom, to prove what was said at the time the will was executed, and also the condition of the mind of the testator. The court excluded the deposition, and it is claimed error was committed thereby. The action of the trial court was correct. [Oexner v. Loehr, 117 Mo. App. 698, 93 S.W. 333.]

The court submitted and passed on, as a question of fact, the capacity of the testator to make a will, and also the issue of undue influence. And if the testimony was sufficient to make these issues questions of fact, then this court will not weigh the testimony or pass upon its credibility. [Crum v. Crum, 132 S. W. 1070.]

Several witnesses testified that both before and after the execution of the will, the testator's mind was sound, and that he understood what he was doing. The trial court had the right to believe these witnesses, as they were disinterested, and there was nothing suspicious about their testimony. It is true the evidence showed that the testator was sick and feeble, and at times suffered great pain, but the defendants' witnesses testified that his mind was clear.

The requirements of a sound and disposing mind do not imply that the powers of the mind may not have been weakened and impaired by old age or bodily disease. To make a valid will, one may not retain all his vigor of mind and memory. It is only required that his mind be sufficiently sound to enable him to know and understand the business in which he is engaged. And a person has such understanding when he knows the paper he is executing is a disposition of his property to take effect after his death, and remembering generally the nature and amount of his property, and the persons he desires to share his estate, and conceives and expresses

by words or signs an intelligible scheme of disposition. King v. Gibson, 206 Mo. 264, 104 S. W. 52; Crum v. Crum, 132 S. W. 1070; Gibony v. Foster, 130 S. W. 314.]

"Neither courts nor juries can make wills, and therefore, they ought to be careful in unmaking them." As said by Chancellor Kent: "The control which the law still gives a man over the disposal of his property, is one of the most efficient means which he had in a protracted life to commend the attention due to his infirmities. The will of such a man ought to be regarded with great tenderness." And in the case of Sloan v. Maxwell, 3 N. J. Eq. 563, the court said: "The power of disposing of property is an inestimable privilege of the old. It frequently commands attention and respect when other motives have ceased to influence. How often, without it, would the hoary head be neglected, deserted and despised." And as said by the court in Salinas v. Garcia, 135 S. W. 588. "Except in extreme cases of imbecility, the aged and decrepit should not be deprived of this last defense against ingratitude and base neglect."

Some of the witnesses for plaintiff testified that they did not consider the testator competent to transact business about the time the will was made. In Gibony v. Foster, supra, the witnesses testified that the testator was not, at the time of executing the will, capable of transacting business matters. In passing on this testimony, the court said: "These statements were mere opinions of non-experts without a single fact upon which to predicate them. There was no attempt by the testator to transact any business at that time other than to make his will. Besides, a man may be capable of making a will and yet be incapable of making a contract or managing his estate."

The burden was on plaintiff to establish the issue of undue influence. [Gibony v. Foster, supra; Lindsey v. Stephens, 129 S. W. 641; Carl v. Gobel, 120 Mo. 283, 25 S. W. 214.]

The influence denounced by law and which will

vitiate a will must have been such as to amount to coercion and destroying free agency. And a will cannot be set aside on the ground of undue influence, unless such influence amounted to a degree of restraint, such as the testator was too weak to resist, and such as deprived him of his free agency, and prevented him from doing as he pleased with his property. Neither advice nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such persuasion. [Jackson v. Hardin, 83 Mo. 185; Gibony v. Foster, 230 Mo. 106, 130 S. W. 314; Lorts v. Wash. 175 Mo. 487, 75 S. W. 95; Brackey v. Brackey, 130 N. W. 370; Chambers v. Brady, 100 Ia. 622, 69 N. W. 1015; Townsend v. Townsend, 128 Ia. 621, 105 N. W. 110; Salinas v. Garcia, 135 S. W. l. c. 591.]

Under the evidence the appellant has no right to complain of the action of the court in treating the questions of testimentary capacity and undue influence as a question of fact.

The conspiracy charged in the petition was wholly unsupported by the evidence, and plaintiff was not entitled to have the issue treated as a question of fact.

The paramount issue in this case relates to what transpired around the bedside of the testator at the time it is claimed the alleged will was executed. The only disinterested witness living is Gustavson. When the will was made, those best acquainted with the testator and his condition, believed he had but a few hours to live. It was the desire of one of the defendants, as plaintiff's testimony tends to prove, that the will be executed at once, and while the testator was in the notion, and that he might be out of the notion by Monday, or he might be dead by that time. There was testimony that at the time the paper was being prepared, one of the favored beneficiaries came from the sick room and inquired how the testator signed his name. Under such circumstances, the testimony of the witness, Gustavson, should have been procured if available.

. We are of the opinion that the evidence failed to
show that the residence of Gustavson was unknown, and
that the court erred in permitting the defendants to
establish the will by proof of his handwriting, and for
such error, the judgment will be reversed and the cause
remanded. All concur.